

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

PETER PANSE,

                              Plaintiff,

             -against-

KENNETH W. EASTWOOD, individually,
VINCENT CRESCENZO, individually,
RICHARD ZUCKERMAN, individually,
ANN E. ANZINI, individually, ELYSE
ANZINI, individually, and the ENLARGED
CITY SCHOOL DISTRICT OF MIDDLETOWN,
New York,

                              Defendants.

------------------------------------------------------------x

06 Civ.  6697 (SCR )

**FIRST AMENDED
COMPLAINT**

*NO NEW PARTIES*

**Jury Trial Demanded**

        Plaintiff PETER PANSE, by his attorneys Lovett & Gould, LLP, for his first

amended complaint respectfully alleges:


                    **NATURE OF THE ACTION**

        1. This is an action for compensatory and punitive damages proximately resulting

from Defendants' conduct, engaged in jointly under color of the laws of the State of New

York, that violated Plaintiff's rights as guaranteed by reason of the First and Fourteenth

Amendments to the United States Constitution, 42 U.S.C. §1983.

1

## JURISDICTION

2. The Court's jurisdiction with respect to Plaintiff's federal claims is invoked pursuant to 28 U.S.C. §1331, 1343. Plaintiffs' supplemental state law claims are interposed in accordance with 28 U.S.C. §1367. With respect to the state law claims, sounding in defamation: a) on January 20, 2006, Plaintiff duly served the Defendant District with a notice of claim in compliance with the provisions of New York State's Education Law and General Municipal Law; and b) on February 17, 2006, Plaintiff duly served the Defendant District with a second such notice of claim. Both notices were ignored by the District and neither claim has been adjusted and/or resolved.

## THE PARTIES

3. Plaintiff PETER PANSE is a citizen of the United States, a domiciliary of the State of New York, and a resident of the City of Middletown situated in the Northern Counties. Plaintiff is a highly credentialed art teacher who for years has been employed by the Defendant School District as a teacher. As such many of this students, who aspire to pursue careers as professional artists, are underprivileged and/or from less-than-affluent families.

4. Defendant KENNETH W. EASTWOOD (hereinafter "Eastwood"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed Superintendent of Schools for the Defendant School District.

5. Defendant VINCENT CRESCENZO (hereinafter "Crescenzo"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly elected President of the Board of Education of the Defendant School District.

6. Defendant RICHARD ZUCKERMAN (hereinafter "Zuckerman"), who is sued in his individual and personal capacities, at all times relevant to this complaint was an attorney at law who represents the Defendant School District.

7. Defendant ANN E. ANZINI (hereinafter "A. Anzini"), who is sued in her individual and personal capacities, at all times relevant to this complaint was employed by the Defendant School District as a "Part-Time Food Service Helper". To the extent that she is alleged to have engaged in conduct adverse to Plaintiff in this complaint, she acted in her individual capacity, not during her employment hours, and in the privacy of her home.

8. Defendant ELYSE ANZINI (hereinafter "E. Anzini") who is sued in her individual and personal capacities, at all times relevant to this complaint was the biological daughter of A. Anzini. She is a student enrolled in the Defendant School District.

9. Defendant ENLARGED CITY SCHOOL DISTRICT OF MIDDLETOWN, New York (hereinafter "District"), is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

10. With a view towards encouraging his less-than-affluent art students to pursue a college art program at any one of a number of excellent such colleges in the United States, Plaintiff in 2005 canvassed those colleges in order to ascertain what if any credentials his students would need in order to successfully compete for scholarships in connection with their applications for admission.

3

11. As a result he learned that the *sine qua non* for scholarship consideration by the top art colleges is the applicants' having an established art portfolio that of necessity has to include sketches of male and female nudes.

12. Believing that his students deserved to be enlightened regarding this scholarship requirement, and knowing that without benefit of such a portfolio even his best art students would not be able to successfully compete for scholarship money, in the Fall of 2005 Plaintiff expressed to his students his belief that:

- A portfolio including sketches of male and female nudes was essential in order for them to compete successfully for scholarship money,

- That certain privately run schools in the New York City metropolitan area offered courses with respect to nude drawing that the students might wish, subject to parental approval, to consider attending, and,

- That it might be in the students best academic interests if there were established a local art school where nude drawing would be taught and in that connection he (Plaintiff) was considering establishing such a school enrollment in which would, in the case of minors, be subject to parental consent.

13. In that connection at no time did Plaintiff:

a. Ever establish and/or operate an art school,

b. Recruit any students to enroll in a for-profit art school run by him,

c. Solicit any students to participate in any such for-profit school, and/or,

4

d. Encourage any students to participate in any such for-profit school.

14. Nevertheless, by reason of content of Plaintiff speech as set forth *supra* in paragraph "12", on December 16, 2005, Eastwood filed with the District's Board of Education calculatedly false disciplinary charges pursuant to Section 3020-a of the New York State Education Law expressly seeking with respect to Plaintiff "the maximum penalty. . .termination from employment".

15. In relevant part those charges, approved for prosecution by the District's Board of Education, provided:

"**CHARGE I**:. . .

"<u>**Specification 1**</u>: On one or more occasions during September – November 2005, you recruited and/or solicited and/or otherwise encouraged students in your 4th period Middletown High School Drawing and Composition class to, in words or substance, participate in a for-profit course you were intending to teach, off of School premises, which was to include among other things, the drawing and sketching of male and female nude models ("the Course").

<u>**Specification 2**</u>: On or about November 14, 2005, while being interviewed about the Course, you falsely represented to District Director for Personnel Ellen Kaplan that, in words or substance, you had on one or more occasions discussed your plans for the Course with Ina Segnit, your Fine Arts Supervisor.

**CHARGE II:. . .**

<u>Specification 1</u>: On one or more occasions during September – November 2005, you recruited and/or solicited and/or otherwise encouraged students in your 4th period Middletown High School Drawing and Composition class to, in words or substance, participate in the Course, despite having previously been directed in writing to, in words or substance, 'avoid making any comments that students could construe as being of a personal or sexual nature. . .or using your position as a teacher to put students into any situation reasonably likely to make them feel uncomfortable because of the injection of sexuality into. . .the substance of your comments."

16. In connection with the preferral of the subject charges, on Eastwood's recommendation and with the approval of the District's Board of Education, Plaintiff was suspended indefinitely from all teaching assignments, expelled from the classroom, and, as a proximate result was deliberately deprived of moneys that he otherwise would have earned but for the disciplinary charges. Also as a proximate result Plaintiff was essentially "gagged' by the municipal defendants and chilled in the prospective exercise of his right to free speech with his art students.

17. With respect to the disciplinary charges and on January 13, 2006, Crescenzo was interviewed at his office by a reporter from the Times Herald-Record and without authority or Plaintiff's permission advised the reporter specifically with regard to Plaintiff:

"We didn't want it said that the Board of Education again turned a blind eye to the abuse of our children. . .We need to protect our

children and what they were going to be exposed to".

18. Crescenzo's statement as referenced in the preceding paragraph "17" was, on January 14, 2006, published by the Time Herald-Record, a newspaper of general circulation.

19. At the time Crescenzo made the subject statement to the media he did so purposefully and knowingly in connection with a reference by him to the District's former Superintendent of Schools (Robert Sigler) who was convicted of sodomizing a male student enrolled in the District and was then serving a sentence of imprisonment as a result.

20. In making his statement to the media Crescenzo intended to reference Plaintiff by name and his position of employment as an art teacher with the District and he knew that his reference to Plaintiff as a sexual predator and/or sexual deviant was false and/or was uttered in reckless disregard for the truth. Crescenzo made the subject statement for the specific purpose of causing irreparable injury to Plaintiff's reputation, destroying his professional career and otherwise causing him intangible and pecuniary damages. Annexed to this complaint and incorporated by reference in this complaint is a copy of the January 14, 2006, article as published in the Times Herald-Record.

21. On January 25, 2006, Zuckerman while acting as counsel to the District, without authority or Plaintiff's permission published to the Times Herald-Record and national media as well a copy of an October 16, 1997, letter (addressed to Plaintiff in his capacity as an art teacher employed by the District) signed by a publicly disgraced convicted pedophile - - the former Superintendent of Schools Robert Sigler. That letter, a copy of which is annexed to this complaint and incorporated herein, was drafted by

Zuckerman in 1997 and with but one minor exception (regarding the final sentence in paragraph "11") was completely false, was known by Zuckerman to be false at the time it was published by him to the media and/or the content of that letter was uttered by Zuckerman in disregard and/or in reckless disregard of the truth. Zuckerman published the subject letter for the specific purpose of causing irreparable injury to Plaintiff's reputation, destroying his professional career and otherwise causing him intangible and pecuniary damages.

22. In connection with the institution and prosecution of the 3020-a disciplinary charges, E. Anzini (to the knowledge, with the encouragement and assistance, and with the consent of A. Anzini ) began publishing on the Internet to the world from her home, by means of her personal blog ("shadow blossoms") calculatedly false assertions of "fact" regarding Plaintiff - - who she identified as her art teacher, by his name in conjunction with references to Middletown, and with respect to whom she deliberately and intentionally falsely characterized him in deprecatory terms for the purpose of irreparably damaging his reputation, destroying his professional career, causing his employment with the District to be terminated, and causing him intangible and pecuniary injury. In that connection E. Anzini and A. Anzini published on that blog calculatedly false accusations of "fact" that:

> a. On October 31, 2005: "yes. today is Halloween. Pansey is dressed up as a woman complete with sock boobs and towel thighs",
>
> b. On October 27, 2005: "Pansey. . .this guy is obsessed with nude models. . .He's a weirdo. . .Freaking weirdo",
>
> c. On November 8, 2005: "AHAHAHAHAHAh!! OMFG PANSEY IS

BUSTED"

e. On November 2, 2005: "The stuff about Pansey is at the lawyers. . . If Pansey is fired. . .how will i get my artwork? Oh, keys. . .but what if he destroys is out of HATRED??. . .If he destroys them. . .I'll see to it that he makes it to JAIL!"

f. On December 23, 2005: "Art class! Since well, Pansey is gone. . . Guess what? Guess!!!. . .guess, dammit! Yeah. It's official, if you haven't GUESSED, Pansey is hereby FIRED. He's GONE. AAHHAHAHAHAHAH!!!. . .Panse is fired cause of me".

g. December 20, 2005: "Pansey is going to be gone forever, JESUS! Yes? What? Ahah! Anyways, yeah, he's going to be gone FOREEVER",

h. December 16, 2005: ". . .Panse is still gone. Either he was fired [yay! I got him fired!] or he's an alien",

i. January 31, 2006: "aaand the second thing that none of you CARE about some of you have heard me talking about Pansey's '97 memo, in which he commented on a girl's legs after seeing her in a skirt, and telling everyone he impregnated his girlfriend at 17. . .Stupid  Mr. Panse. lol! Jesus. He is such a MOLESTER! He would look down girl's shirts. . .'I SAY MR. PANSE AT PORN STORE!!" sooo,yeah. MR. PANSE WAS AT THE PORN STORE". . .probably buying child pornography. . .AND PANSE IS A MOLESTER!!!!and Cassie [a supporter of pansey] used to wear really revealing things. . .AND HE WOULD STARE",

j. January 24, 2006: "Did you hear how he harassed some kinds into taking nude figure classes?. . .there are other things we should be worrying about than some retarded art teacher, who WAS told before that he would be punished for doing what he did. . .I'm glad Panse is gone!"

k. February 1, 2006: "WE'RE ALL TO WORRIED ABOUT A PERVERTED ART TEACHER TO EVEN THINK ABOUT A FREAKIN PRINCIPAL DUMBASS!",

l. May 2, 2006: "Hokay. Panse is most definitely a **PERVERT**!!! We went to the flea market today with Oma. Just us girls or whatever, and we decided to go **PETER PANSE HUNTING**!!!! So we found his little 'Sunshine Studios' place. His wife's kinda short and dumpy **NO WONDER HE'S A PEDOPHILE!!!**", and,

m. April 1, 2006: "which reminds me. i STILL haven't gotten my money. . .ah well, I'll voice my complaint if Pansey is re-hired. If he's fired. Keep the damn money - - use it to fire his sorry ass."

23. As a result of Defendants' conduct Plaintiff has been caused to suffer: retaliation for his exercise of his right to free speech; a chilling of his right to free speech; a selective prosecution; public humiliation; public degradation; public embarrassment; anxiety; pecuniary losses; emotional upset; destruction of his professional reputation; destruction of his personal reputation; impairment of his professional career; *per se* defamation; and otherwise has been rendered sick and sore.

## AS AND FOR A FIRST CLAIM AGAINST
### EASTWOOD, CRESCENZO AND THE DISTRICT

24. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "23", inclusive.

25. Under the premises Defendants' retaliatory actions violated Plaintiff's right to free speech as guaranteed him by reason of the First Amendment, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM AGAINST
### EASTWOOD, CRESCENZO, AND THE DISTRICT

26. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "23", inclusive.

27. Numerous members of the District's faculty, and even Crescenzo's wife (Lori, who distributed fliers in the schools for the "Performing Arts Program" in which she is an instructor) have without lawful authority or permission, but with impunity, advertised on District property for-profit programs with the intent to solicit, recruit and/or encourage student enrollment for fees. Other faculty members have written text books which, while they were employed by the District, they sold to the District for obligatory use by its students.

28. Staff who teach Biology in the District's classrooms over the years have with impunity required students to utilize a Prentice Hall textbook entitled Biology The Study of Life even though that text depicts male genitals, female genitals, and variously describes: "human mating, or sexual intercourse", the "ejaculat[ion]" of "hundreds of millions of sperm. . .into the vagina"; male "testes [that] hangs outside the body wall",

the "scrotum", **"semen"**, "sex characteristic, [that] include breasts", and *inter alia*

**"ovaries"** (boldface in original text).

29. Other staff who teach Biology in the District's classrooms have over the years with impunity required students to watch live childbirth, on camera.

30. Under the premises the prosecution of Plaintiff for using the word "nude" in connection with his expression of opinion regarding the availability of scholarship opportunities to his less-than-affluent students constitutes a selective prosecution and a violation of Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM AGAINST CRESCENZO

31. Repeats and realleges as if fully set forth the allegations of fact set forth in paragraphs "5", "15", "20", and "23", inclusive.

32. Under the premises Crescenzo's conduct constituted *per se* slander actionable for damages under New York State's common law.

## AS AND FOR A FOURTH CLAIM
## AGAINST E. ANZINI AND A. ANZINI

33. Repeats and realleges as if fully set forth the allegations of fact set forth in paragraphs "7", "22" and "23", inclusive.

34. Under the premises Defendants' conduct constituted *per se* libel actionable for damages under New York State's common law.

## AS AND FOR A FIFTH CLAIM
## AGAINST ZUCKERMAN

35. Repeats and realleges as if fully set forth the allegations of fact set forth in paragraphs "6", "21" and "23", inclusive.

36. Under the premises Zuckerman's conduct constituted *per se* libel actionable for damages under New York State's common law.

WHEREFORE a judgment is respectfully demanded:

    a.  Awarding on the First and Second Claims as against the individually named Defendants such punitive damages as the jury may impose and as against all Defendants such compensatory damages as the jury may determine, along with reasonable attorney's fees, and costs,

    b.  Awarding on the Third, Fourth, and Fifth Claims both compensatory and punitive damages, along with costs, and,

    c.  Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       September 13, 2006

                          LOVETT & GOULD, LLP
                          By:_____
                              Jonathan Lovett (4854)
                          Attorneys for Plaintiff
                          222 Bloomingdale Road
                          White Plains, N.Y. 10605
                          914-428-8401

Times Herald-Record   Saturday, January 14, 2006



**LOCAL ART TEACHER**

**PAGE 3**

Page 3

# Nudes draw suspension for teacher in M'town

**By Dianna Cahn**
Times Herald-Record
dcahn@th-record.com

**Middletown** – Art teacher Peter Panse told his students at Middletown High School that nude figure drawings will help get them into art colleges. He told them about courses in New York City and encouraged them to take a nude figure-drawing course he was proposing to teach outside of school.

In response, four students took nude figure drawing at the New York Academy of Art during the summer, helping build portfolios that have already earned at least one of them a scholarship offer.



Peter Panse

But it also got Panse suspended last month.

The kids are too young for such classes, and Panse didn't involve their parents, school board President Vincent Crescenzo said yesterday. In light of a previous scandal, when former Superintendent Robert Sigler was imprisoned in 2003 for having an ongoing sexual relationship with a teen male student, the board needed to "be pro-active," he said.

"We didn't want it said that the Board of Education again turned a blind eye to the abuse of our children," Crescenzo said. "We need to protect our children. We are talking about 14-, 15-, 16-year-old children and what they were going to be exposed to."

Panse's lawyer sees it another way: "It's a Neanderthal administration," said Jonathan Lovett. "They've got to be sufficiently brain-dead to be doing what they did.

"On a scale of one to 10 in stupidity, this is 11."

A group of Panse's students and their parents told the school board Thursday night what a loss his suspension is to their art education and possibly their futures.

"Until recently, I thought that it wasn't even conceivable to get into an art school, let alone with a scholarship," said Reanna Fisher, a junior who received art-scholarship offers from two colleges. "He's the first and only teacher to help and guide me on where I need to go to have a chance at these schools."

"What kind of message are you sending to the rest of the teachers in the district?" asked Reanna's father, Jerry Fisher. "He's trying to help students, help me because the scholarships we are talking about are substantial."

One parent said yesterday that he was downright opposed to his daughter being exposed to nude male models at such a young age. But he didn't think Panse should be punished.

"I don't think my 16-year-old daughter should be in that situation," he said. "But the fact that it was suggested in class – I have no problem with that. I am a dad and I can say no."

Panse was suspended on Dec. 16 and brought up on two school disciplinary charges for recruiting, soliciting or encouraging students to take the nude figure-drawing course he planned to give and for doing that after he'd been warned to "avoid making any comments" that students could construe as sexual.

It's a question of what is appropriate for teens in school, Crescenzo said.

It's absurd, said Lovett, and also a question of free speech.

In the end, it will be up to a hearing officer to decide.



OFFICE FOR PERSONNEL SERVICES
PETER M. ANCONA
Director

223 Wisner Avenue
Middletown, N.Y. 10940
Phone (914) 341-5313
Fax (914) 343-0243

October 16, 1997

Mr. Peter Panse
RD #1 Box 492
Van Duzer Road
Middletown, NY 10940

Dear Mr. Panse;

As you know the District has been conducting an investigation into the following alleged incidents between you and your students. As part of that investigation the District (myself, Richard Zuckerman, William Stickney and Peter Ancona) met with you and Martin Harnick on June 3, 1997. In addition, on June 24, 1997 Mr. Ancona and myself met with you and Martin Harnick to discuss the alleged incidents.

1.  First there is the matter of things said in class such as that you asked a female student to show you where her tan lines were. During our June 3, 1997 meeting, you responded to that statement by saying that you did recall mentioning tan lines and that you were aware that the remark was in your own words, a "double-entendre." You also stated that you were pretty sure you did say "Do you have tan lines or are you tan all over?" as a way of stating that some people sunbathe in the nude to avoid tan lines. You also said in your response that nudity with teenagers is something they are uncomfortable with.

2.  We discussed the allegation that another student in your class brought photos of herself to school and you told her that it made you wish you were seventeen again and that she had nice legs and that you moved her to the front of the class and talked about being seventeen and impregnating your girlfriend. During our meeting of June 3, 1997 your told us that Rubens married a seventeen or sixteen year old and that cut back in his artistic production. You

*Accredited by Middle Atlantic States Association of Colleges and Schools*

said you showed pictures of Rubens and maybe this is where this remark came from. You also said that you do compliment students and move them around and maybe this could be a coincidence. In addition, you stated that you were trying to communicate to the student that the student looked good.

3.  The next allegation involved the mirror over the drawing table and you were asked during our June 3, 1997 meeting if you were aware of the student discomfort with the mirror. You stated that the mirror was placed there to help the other students observe what was happening at the drawing table. You were also told that the female students thought that the mirror was there to allow you and other students to look down their blouses. During our June 3, 1997 meeting your response to this was that you could see that this was a cause for concern and that you don't ever remember a female commenting on the mirror.

4.  During our June 3, 1997 meeting we discussed the allegation that you told the class that the other art teachers at Middletown High School were no good and they were "easy A"s." Your response to this was that there are three other art teachers and some object to my class being too difficult. You also stated "I make no secret of it that there is no cohesiveness in the department." "I communicate my dissatisfaction with crafts being taught."

5.  The next allegation was that you referred to one art teacher as a "bimbo" and another art teacher as a "fucking bitch." During our meeting of June 3, 1997 your response was that "That did not happen."

6.  Another allegation was that students say you make it clear that when an attractive female walks by you cover your crotch as if hiding a hard on. During our meeting of June 3, 1997 your response to this allegation was "No, I do not do this."

7.  We discussed the allegation that on or about two years ago in your class a female student was by a slide projector and reached up and her shirt lifted exposing her belly button. It was alleged that you commented that she had a flat stomach and she should wear more shirts like that. During our June 3, 1997 meeting your response was that you might have said, "Does your mother know you dress like that?" and that some students dress inappropriately. You were asked if you had talked to the parents about the student's dress and you indicated that you had not.

8. We discussed the allegation that another student wore a skirt in your class and you said "her legs looked good" or that she had "nice legs." During our June 3, 1997 meeting your response was that you made a practice in the past of complimenting students and that you have stopped doing this complimenting after a conversation with Mr. Stickney earlier in the school year. During that conversation Mr. Stickney informed you that it was inappropriate to make those comments and you agreed with him and said that the comments would stop.

9. It was reported that sometime in the past you had mentioned smoking owls in front of the class. Your response was "It was in the context of a joke" and that you used this to talk about students who were skipping school and sitting in back of Lloyds.

10. We discussed the allegation that students claim you drew a picture of a tent with a stick figure of a boy reading Playboy with some jars of lubricant. During our June 3, 1997 meeting your response was that you do a unit on perspective and that you start with a cube and that the cube winds up looking like a pup tent complete with stakes and two individuals in a sleeping bag in the tent. One student was reading a magazine. "I'll call on a student not paying attention and I'll draw a third stick figure peeing in the bushes. I'll tell them that this is so and so peeing in the bushes. I didn't draw any lubricants."

11. We discussed the allegation that there was a claim that you placed money on a table and told the students they could have it if they could draw better. During our June 3, 1997 meeting your response was that you would offer $1.00 if some of the students would perform better and that you suggested that anyone who wanted to participate in a competition could put 25 cents in a pot and the winner would take all. You stated that there was a student who did the competition in under 30 seconds and you invited students to put in money and you put in $5.00 to see if they could do it again. The financial reward was offered to raise quarterly grades.

12. We discussed the allegation that while showing a slide presentation you noticed a girl reaching under her skirt to fix her slip. Did you say "Are you having any personal problems and do you need any help?" During our meeting of June 3, 1997 your response was "No, if a student has some garments that are slipping I have offered a stapler." "I can't recall that incident".

The District finds the allegations listed in Paragraphs 1-12 to be credible either by your having admitted that they occurred or we did not find your responses to be credible, particularly in light of the warnings you received from Mr. Stickney and others and the credibility of witnesses to the incidents. You have presented no defensible, pedagogical, or other need or reasons for discussions about your students' personal appearance. Nor have you persuaded us that there is any legitimate pedagogical or other need for you to engage in sexually related banter or other conversations with your students. Further, you have presented us with no pedagogical or other need or reason to discuss your personal opinions about other staff members with your students. Under the circumstances, your behavior as you have at least partially admitted and recognized, is inappropriate, unprofessional and unacceptable.

Therefore, you are being directed to avoid making any comments that students could construe as being of a personal or sexual nature including presentation of any graphic sexual material or innuendo and/or using your position as a teacher to put students into any situation reasonably likely to make them feel uncomfortable because of the injection of sexuality into your approach or the substance of your comments. Any further conduct that violates the directives set forth above will likely result in the preferring of formal disciplinary action against you. For this reason, we urge and counsel you to think before you speak and to consider alternative ways of communicating your message.

In order to assist you in this regard, we are enclosing a copy of the District's Sexual Harassment Policy so that you are further sensitized to this issue. We also urge you to discuss any situations that cause you discomfort with the building principal, Director for Personnel Services Ancona or myself.

Moreover, if anything that is set forth above is unclear, or if you have any questions about the context of this memorandum or the directive to you contained in it, please contact Mr. Ancona or myself immediately for clarification.

Sincerely,

Robert H. Sigler, Jr.
Superintendent of Schools

My signature below confirms that I have reviewed, read and understood this memorandum and its contents.

Peter Panse

Cc:    Peter Panse Personnel file