*Page 1 of 19*

STATE EDUCATION DEPARTMENT
DIVISION OF EMPLOYER-EMPLOYEE RELATIONS
-------------------------------------------------XXX
In the Matter of the Disciplinary Proceedings of:
Board of Education [BOE]
Middletown Enlarged City School District

NYSED

JAN 0 8 2007

OSPRA

-and-

Peter Panse (Respondent)
SED File No: # 5438
-------------------------------------------------XXX

<u>Opinion and Award</u>

| | |
|---|---|
| Before: | Joel M. Douglas, Ph.D.<br>Hearing Officer |
| Date: | December 30, 2006 |
| Appearances: | <u>For the District</u><br>Lamb & Barnosky, LLP<br>By: Sharon N. Berlin, Esq.   Counsel to the District<br>Donna Canfield Esq.   Counsel to the District |
| | <u>For the Respondent:</u><br>Lovett & Gould, LLP<br>By: Jonathan Lovett, Esq.   Attorney for the Respondent |

Pursuant to Section 3020(a) of the Education Law of the State of New York, the above stated matter was heard by this Hearing Officer. Respondent was served with a Notice of CHARGES AND SPECIFICATIONS accusing him of conduct unbecoming a teacher, insubordination, and/or misconduct and/or just cause to discipline. For these specifications the BOE seeks Respondents termination from service. Telephonic pre-hearing conferences were held on April 26, 2006 and April 28, 2006. Hearings were held on May 9, May 24, June 5, 2006, September 6, September 18 and October 3, 2006. Both parties were represented by the above stated appearances and were afforded full opportunity to present evidence, both oral and written, to examine and cross-examine witnesses and otherwise to set forth their respective positions, arguments and proofs. At the conclusion of the

testimony both parties presented written briefs. The hearings were transcribed and the record consisted of 711 transcript pages, 11 BOE Exhibits, 5 Respondent Exhibits, and related court and SED cases and Arbitration Awards. These findings are based on the record as thus constituted.

The instant case involves Two Charges and Three Specifications of conduct unbecoming a teacher and misconduct and insubordination, and neglect of duty preferred against Peter Panse, a tenured art teacher, employed by the Middletown Enlarged City School District. (DX #1) For these specifications the DOE seeks Respondents termination from service.

# CHARGES [DX #1A]

**CHARGES and SPECIFICATIONS**

The District alleges that during the school year 2005 -2006 the Respondent engaged in the following:

Charge 1.    Conduct Unbecoming to Teacher And/or Misconduct And/or Just Cause to Discipline.

    Specification 1.    On one or more occasions during September-November 2005, you recruited and/or solicited and/or otherwise encouraged students in your fourth period Middletown High School Drawing and Composition class to, in words or in substance, to participate in a for-profit art course you were intending to teacher, off of School premises, which was to include among other things, the drawing and sketching of male and female nude models ("the Course").

    Specification 2.    On or about November 14, 2005, while being interviewed about the Course, you falsely represented to District Director for Personnel Ellen Kaplan that, in words or in substance, you have had on one or more occasions discussed your plans for the Course with Ina Segnit, your Fine Arts Supervisor.

Charge 2.    Insubordination and /Or Misconduct And/or Conduct Unbecoming to Teacher And/or Just Cause to Discipline.

    Specification 1.    On one or more occasions, during September-November 2005, we recruited and/or solicited and/or otherwise encouraged students in their fourth period Middletown High School Drawing and Composition class to, in words or in substance, participate in the Course, despite having previously been directed in writing to, in words or in substance, "avoid making

*Page 3 of 19*

> any comments that students could construe as being of a personal or sexual nature... or using your position as a teacher to put students into any situation reasonably likely to make them feel uncomfortable because of the injection of sexuality into... the substance of your comments." (DX #1)

An examination of the Charges, Specifications and proofs is set forth below.

---

### DISCUSSION OF THE HEARING OFFICER

**Specification 1.**    *On one or more occasions during September-November 2005, you recruited and/or solicited and/or otherwise encouraged students in your fourth period Middletown High School Drawing and Composition class to, in words or in substance, to participate in a for-profit art course you were intending to teach, off of School premises, which was to include among other things, the drawing and sketching of male and female nude models ("the Course").*

The Respondent is a tenured art teacher in the Enlarged Middletown City School District. He taught, among other courses, High School Art to students ages 14, 15, and 16. The District asserted that Panse encouraged and coerced his students to attend a nude-figure drawing class that he would be teaching privately for his own profit and that he did so without school authorization. They claim that by his actions he was insubordinate and demonstrated a lack of professional judgment. The District submits that this case is not about the constitutional protections of free speech, a right asserted by Panse, nor does it concern admission standards to art schools. They argue that the actions of Panse were in clear violation of the District policy against commercial solicitation and that Panse's actions rose to the level of both misconduct and insubordination. The District also maintained that Panse's discussion of his off-the-premises art course to his art students was an attempt to coerce them.

It is the position of the Respondent that the District produced no evidence whatsoever to establish their proofs and as such, he must be found innocent of the December 15, 2005 charges. Respondent argues that the District has failed to prove the charges and as such the charges are completely frivolous and the attorneys' costs and fees should be assessed against the District. The

Respondent denies that he attempted in any manner to coerce his students into taking the Course. Respondent argues that no coercion was intended or ever occurred. The record documents that no coercion was ever proven.[1] While it was most likely not the intent of the District to charge Mr. Panse with "coercion," the arguments raised by Respondent's counsel in defense of this assertion were persuasive. The record does not indicate any effort or proof whatsoever of "coercion."

The instant case originated in October of 2005 when a parent [AA] of a student in Panse's fourth period art class approached Personnel Director Ellen Kaplan and inquired into a nude drawing class that Panse was recruiting students for. (TR-98, TR-209) Ms. Kaplan interviewed students and parents in Panse's fourth period art class including the parent AA, her daughter EA and the student GT and her father RT. After the interviews were conducted, Kaplan met with Panse and inquired whether or not he had discussed with his fourth period class the offering of a nude drawing class. Panse allegedly stated that he had done so. (TR-132) Respondent informed Kaplan there would be a series of 35 art classes held on Saturdays, eight hours per class, and that a fee would be charged. (TR-132) He also allegedly admitted to her that he had repeatedly referred to the nude drawing class during the fourth period art class.

The District argued that Panse was in violation of District Policy No. 6430 which prohibits commercial solicitation by teachers on school time. (DX #7) Since Panse elected to ignore the District policy, it is their position that his actions rise to the level of insubordination. Ms. Kaplan asked Mr. Panse if he had attended the 2005-2006 Policy and Procedure training which included reference to the

---

[1] While coercion was never proven, Respondent cited Section 135.60 of the New York State Penal Law as the definition of coercion:

> *A person is guilty of coercion in the second degree when he compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in ... by means of instilling in him a fear that if the demand is not complied with, the actor ... will:*
>
> *8. Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty in such a manner as to affect some person adversely ...*

following:

> *Staff members shall not engage in advertising or commercial solicitations on school time except as authorized by the superintendent and/or designee. (DX #7) (TR-148)*

The Respondent admitted that he had attended and had received the aforementioned Policy and Procedure training. (DX #8)

The testimony of Ellen Kaplan was that it was reported to her that Panse told his fourth period art class that he would conduct a Saturday fee-based nude drawing class consisting of 35 lessons. (TR -132) The reason that Panse allegedly made the statements was to encourage art students to improve their portfolios in order to be admitted to the top art colleges. Student GT [11th grade] testified that she was in Mr. Panse's fourth period art class. (TR- 410) She noted that he discussed the taking of an art course outside of the high school and it would be a figure drawing course taught by Panse at Orange County Community College. According to GT, the class would have eight hours and would have a price. GT allegedly told Panse that she wanted to take the course but would have to first discuss it with her parents. (TR-419) GT did take a ten-week nude drawing course with her parents' permission, but not one offered by Panse. She did so to improve her art portfolio to gain admission into college. (TR-424) She acknowledged that nude drawings would help her get into a good college. (TR - 424) GT testified that her father assisted her in the enrollment of the course which included nude models, but that she did not attend classes in which male models would be used.

GT's father RT testified as to the art course taken by his daughter and acknowledged that he had previously "prayed" for Mr. Panse. (TR-450) When he was asked why he permitted his daughter to take a nude drawing course, he stated, "After conversations with Mr. Panse and John Dean Martin, I felt it necessary to accept that there were things I don't know about art skills and accepted nude drawing limited to female models or male models that are clothed." (TR- 451-452). He noted that he heard the same from every other art instructor that it is important to sketch nude models. (TR- 454)

*Page 6 of 19*

Student BG [16 years of age] testified that he was in Mr. Panse's fourth period art class. He testified that Panse discussed offering a nude drawing classes outside of the high school and he wanted to start a program to help his students build up their art portfolios in order to gain admission to better colleges. (TR- 467) BG noted that the statements were made on at least five to ten different occasions within September and November 2005. The student testified he did not enroll in the proposed class because he would be uncomfortable drawing nude people. (TR-471) The student acknowledged that he was not planning to apply to an art college and he has not enrolled in any nude drawing class. The student also added that there was no discussion of a fee for the proposed class but that parental permission was required. (TR-477- 488) The student acknowledged that Panse was a good teacher and he learned a lot from him. (TR-480- 484)

Respondent argues that the charges issued against him were frivolous and claims the following:

- a) the so-called for-profit art class being offered by Panse was never taught,
- b) the fact that Mr. Panse would have taught a private nude drawing course was never proven,
- c) the aforementioned art course was never offered or given,
- d) Panse never had any personal or financial gain,
- e) Kaplan's testimony was rank hearsay and that it must be totally discredited.

It is the position of the Respondent that the preferring of the instant charges is an attempt to limit his First Amendment rights to free expression and that the "sexuality" injected into the instant case is a result of BOE action.[2] Respondent maintains that the discussions he held with students on this topic were directly related to art scholarship opportunities and portfolio requirements for admission into top

---

[2] It appears that the Respondent has filed a Federal Action against the District concerning issues of his First Amendment rights. Although this issue was tangentially addressed at these hearings, this is not the proper forum to adjudicate such a claim and as such no further comments will be directed by the undersigned in this area.

*Page 7 of 19*

art schools.

The record documents that conversations regarding a privately taught art class which would include nude models were held by Panse in his fourth period art class and that such discussions were in violation of District policy. Such classroom discourse by staff members relating to commercial solicitations on school time must be authorized by the Superintendent and/or designee. (DX #7) There is no indication in the record that Panse obtained early approval. Pursuant to District policy prior authorization for any commercial solicitation must be pre-approved. That this particular course involved nude models, a point repeatedly referenced by the BOE, is noted, but was not considered dispositive in the findings on this specification. The evidence produced by the BOE on this charge satisfied the requisite quantum of proof. Based on the evidence and in consideration of my findings, the record supports the finding that Respondent is guilty of Charge One, Specifications One.

---

**Specification 2:**  *On or about November 14, 2005, while being interviewed about the course, you falsely represented to District Director for Personnel Ellen Kaplan that, in words or in substance, you have had on one or more occasions discussed your plans for the Course with Ina Segnit, your Fine Arts Supervisor.*

Mr. Panse was charged that on February 14, 2005 he falsely represented to Ellen Kaplan that he had on one or more occasions discussed his plans for the "Course" with Ina Segnit, his Fine Arts Supervisor. The Respondent argues that he discussed with Segnit what he refers to as a "hypothetical course." Panse claimed *he had* two conversations with Segnit while Kaplan's notes said that *he may have had* two such communications with Segnit. (TR-239) When Panse was asked if he had discussed the art course with his building supervisor he reportedly told Kaplan that he had spoken with Ina Segnit on two occasions about the class. (TR-151) He claims that in September 2005 he mentioned it to her and again did so on a second occasion and explained to Segnit that he was having difficulty finding a location and paying insurance costs for his private art course. According to Kaplan, Ms. Segnit told her that Panse never mentioned that the private art instruction would involve nude drawing.

*Page 8 of 19*

The District submits that Ina Segnit testified that Panse came into her office before the school year started in September 2005 and told her he was trying to obtain studio space in Middletown for his own artwork and/or instruction but at no time mentioned to her that the class would include the drawing of nudes. (TR-540) Segnit denied having any discussions pertaining to private art classes with Panse which would include the drawings of nude figures. Ms. Segnit added that if any of her Fine Arts Department teachers wanted to offer private instruction, they were required to complete and submit Mentoring Notification Forms and that Panse had not done so.

The testimony of Segnit, as relayed by Kaplan and on her own direct examination, was difficult to follow and contained numerous inconsistencies. She recalled the initial Panse conversation about an outside art course and that he was having difficulty with insurance rates and locating suitable space. (TR-547-8) Segnit prepared her "Summary Statement" but offered conflicting testimony how and why she came to write said document. (DX #9) (TR - 562-563) Why Segnit referenced the two music teachers and the mentoring program in her "Summary Statement" was unclear. Segnit completed her document after she had spoken with Kaplan and testified that she wrote it in order to avoid a meeting with Kaplan and BOE counsel. (TR - 566)

It is clear that Panse discussed a private art course that he was planning to teach with Supervisor Segnit. When asked what the nature of the class that Panse would teach would be, Segnit testified that she was told it was "art lessons." (TR- 577) When asked about a meeting with Ms. Berlin and Ms. Kaplan and if the concept of nudity was discussed between her and Panse, Segnit replied; "I don't know." (TR- 578) This testimony, albeit in a slightly different form, was repeated by Segnit. (TR- 578) Thus the record documents that Panse spoke to Segnit once or twice about an art course in which he would give private art instructions. Segnit was unclear whether nudity was discussed and although the BOE claims that it was not, the testimony of the only direct witness on this point, Segnit, was ambivalent. Segnit's testimony was difficult to reconcile with the Charge and was insufficient to sustain

Page 9 of 19

a finding of guilt on this Specification. The evidence produced by the BOE on this charge did not satisfy the requisite quantum of proof. Based on the evidence and in consideration of my findings, the record supports the finding that Respondent is not guilty of Charge One, Specification Two.

---

CHARGE Two:

Specification:    *On one or more occasions, during September-November 2005, we recruited and/or solicited and/or otherwise encouraged students in their fourth period Middletown High School Drawing and Composition class to, in words or in substance, participate in the Course, despite having previously been directed in writing to, in words or in substance, "avoid making any comments that students could construe as being of a personal or sexual nature... or using your position as a teacher to put students into any situation reasonably likely to make them feel uncomfortable because of the injection of sexuality into... the substance of your comment.*

This Charge involves levels of subjectivity not proven by the record evidence. The proof necessary to sustain this charge would require that students be placed into a situation created by Panse whereby they were likely to be "*reasonably... uncomfortable because of the injection of sexuality...*" When examining the level of proof required to prove this Charge and Specification with the evidence produced, and by the standard of a preponderance of the credible evidence on the record, Charge Two must fall.

The District relies on the testimony of Kaplan that student EA told her that she was uncomfortable in Panse's class and that student BG actually testified to the same at the hearing. (TR- 480, 483) [3] The District further alleged that in Panse's correspondence to the father RT he acknowledged the potential for discomfort in the sketching of nude models. (TR- 442) (DX # 5) (TR. -459) Therefore it is the position of the District that they have proven the charges and that Panse mut be discharged from his tenured position.

The record documents that the parties stipulated that a directive written by the former

---

[3]    Student EA was not called to testify in this proceeding.

Superintendent of Schools was placed into Panse's personnel file citing in essence the contents of Charge Two, Specification No. 1. Respondent acknowledged that he received the directive and did not grieve the issuance of same. (TR-141; TR-49) Therefore it is a position of the District that Panse was warned as to the proper course of action and that his actions of injecting sexuality into his contents rose to the level of insubordination.

Since Panse encouraged the students to take the private course involving the sketching of nude male and female models, it is the position of the District that his comments made the students feel uncomfortable. It is the position of the District that students of this age, 14, 15, and 16, are struggling with their own changes in their bodies and to take a Saturday course in nude sketching would make them feel uncomfortable. The District argues that Panse was aware that the sketching of nude models might cause concern to students when he and Kaplan discussed the issue. (TR-129)

Respondent claims that with respect to the documentation and/or warning he received from the prior Superintendent of Schools, that said charge must fall. The record documents that the so-called 1997 prohibition against making students uncomfortable because of sexual comments was issued approximately ten years ago. Respondent maintains that what might have been "uncomfortable" in 1997 might not now rise to the same level. Additionally, the Respondent argues that at the very least psychiatric or psychological testimony as to what would make a high school student feel uncomfortable when discussing sexuality would be necessary in order for the District to establish an evidentiary foundation to have proved this Charge. Absent any supporting professional testimony, Panse argues that there was no basis in the record for a finding of guilt on this Charge. In his assertion he is correct.

It is the position of the Respondent that he did not make any statements that were personal in nature and that nothing was said of a sexual nature. Respondent argues that since the former Superintendent of Schools who issued the warning has since been convicted and is now classified as a felon and a pedophile, that what he intended in terms of a prohibition against being "uncomfortable"

*Page 11 of 19*

that he placed upon the Respondent is unknown. It is the position of Respondent that what a pedophile might claim to be language to make a student uncomfortable is not the same as the words uttered by Mr. Panse.

That Panse intended to offer a private art courses to high school art students which would involve drawing of nude models does not *de facto* equate with sex or sexuality. Works of art involving nude subjects has long been an established and recognized foundation of the "art world" and whether viewing or sketching such subject matter makes one uncomfortable is a personal matter. The discussion of drawing nude models on a volunteer basis, in a course to be offered off the school premises by a tenured art teacher, does not rises to the level of referenced in this Charge and Specification. One must note that one of the complaining students [female GT] subsequently voluntarily enrolled in a private art course involving nude models, albeit she chose to only attend those classes in which females models would be used. It is difficult to see where the admonition against making comments of, "... *a personal or sexual nature* ..." could include a discussion of potential course offerings of this type. Even the father of the student who testified against Panse acknowledged the need for nude models when establishing a portfolio for admission into an art college. (TR -453-453) The evidence produced by the BOE on this charge did not satisfy the requisite quantum of proof. Based on the evidence and in consideration of my findings, the record supports the finding that Respondent is not guilty of Charge Two, Specification One.

## FINDINGS of the HEARING OFFICER

The findings in the instant matter focus on the evidence that the Respondent engaged in behavior that was prohibited by District Policy #6430. (DX #7) One cannot solicit students for courses without permission. This is the standard for all teachers including Panse. That the course in question had an element of nude drawing, a point emphasized repeatedly by the BOE, was not a controlling

*Page 12 of 19*

factor in reaching this decision.

Ina Segnit testified that she had served as Panse's supervisor during the 2005-2006 school year and that Panse told her he was trying to get an outside art studio, but was having problems with rental expenses and insurance rates. (TR-540, 541) She stated that Panse did not mention nude art lessons and that was the only conversation they had. When asked whether or not Panse was present at a September 2005 faculty meeting when the subject of mentoring was discussed, it is position of the Respondent that Segnit's testimony was inconsistent. She stated, "I believe he was, I believe he was present" and then "I don't know." (TR-547, 548) Panse submits that Segnit had selective memory and all of her testimony should be disregarded. Respondent also argues that Kaplan's testimony must be rejected as being incredible and evasive.

Panse's position that nude drawings were a significant element in a student's art portfolio apparently had the support of the Fine Arts Supervisor. Kaplan's written interview notes reflecting a conversation she had with Segnit notes that Segnit said to her that students, "need to do it" [sketch nudes] for admission into art colleges. ( TR -524) (See RX #E) Segnit also noted that "David and Michelangelo" are often depicted in an historical artistic sense in High School art classes through the use of slides. (See RX #D, notes of Kaplan reflecting conversation with Segnit)

It is position of Respondent that the District never proved the Charges and as such they must be dismissed. Respondent maintains that all of his references to an off-premises art class were hypothetical, speculative, that the class was never given, that no student ever attended or paid a fee, and that no profit was ever received or that he would profit in any manner. This argument was not persuasive. That the course was never offered does not excuse the fact that Panse made the comments attributed to him. His actions constituted solicitation and were made without permission or under the conditions required pursuant to the mentoring form or the District solicitation policy

The District maintains that the actions of Panse in spite of the previous warning constitutes an

act of insubordination.[4] They argue that his actions were "willful" or in defiance of both a direct order and an established rule." Yet there is no proof in this record that the actions of Panse made comments, "... that students could construe as being of a personal or sexual nature... or [that he used his] position as a teacher to put students into any situation reasonably likely to make them feel uncomfortable because of the injection of sexuality into... the substance of... [his[ comment [s]."

The discussion of nude art drawing classes as linked to art portfolios for college admission cannot be considered as sexual comments designed to make students uncomfortable. Any student considering college art courses may indeed be introduced to works of art involving nudes. Likewise, a visit to any art museum in the country might indeed involve the viewing of nudes in an artistic setting. The very mention of nude drawing in a public school art course offered by tenured art teacher cannot be considered as a remark sexual in nature of the type referenced in the 1997 memorandum. It should be noted that if another teacher or staff member not involved in the teaching of art were to make such comments that were outside of his area of expertise then such a claim might indeed be more valid; however, a tenured art teacher of the experience level as Panse has achieved a degree of legitimacy in his subject area and may very well be qualified to make suggestion of this type that might enhance a student in Middletown opportunity to gain admission into an art college. The fact that Respondent discussed an off-the-premises art course which involved nudity does not, according to the Respondent, refer to sex, but instead it directly related to the need to establish an art portfolio for admission into art colleges. This position was credited.

Respondent also argues that Kaplan was not truthful and had "strategic amnesia." The record documents that her constant inability to recall what was told to her as cited in the transcripts from TR - 182 through 196 was difficult to comprehend. Kaplan's also could not recall what student GT, an

---

[4] It is the position of Respondent that since the former Superintendent who issued the directive cited in Charge Two, Specification One, is incarcerated in a New York State penal institution, that the nature of the Charge is tied to some type of a mind-set existing in Middletown concerning sexuality.

allegedly complaining student, told her is also noted. Similar testimony authored by Kaplan on TR-197-300 is again replete with the fact that Kaplan was not able to recall what it was that exactly happened.

### PENALTY FORMULATION

The facts in the instant case were rigorously disputed. As I have previously noted in other 3020(a) decisions, the Respondent argued that Section 3020(a) must be construed in favor of the employee and that in the instant matter the BOE has the burden of establishing the specifications by the preponderance of the credible evidence on the record. The Respondent also notes that the statute is not intended to be punitive and that the charges have to be substantial as well as substantiated.

> *Respondent argues that Section 3020(a) safeguards her constitutionally protected interests and must be construed in favor of the employee. That a tenured teacher has a property interest in his position is not disputed.[5] Therefore, the procedural aspects of a 3020(a) proceeding are critical and must be strictly adhered to. The record documents that in the instant case the undersigned has rigorously observed the 3020(a) shield. Respondent further contends that only charged misconduct can form the basis upon which a 3020(a) finding can be based.*

The §3020-a statute contains a just cause element. Concerning "just cause" the Respondent claims that the Department has failed to establish just cause for the imposition of discipline and he is not guilty of the charges preferred against him. This position was not credited. The just cause element that inquiries be conducted prior to charges being preferred was satisfied.[6] The BOE maintains that the investigation was fair and objective and that the Respondent was continuously provided with the opportunity to present his side of the story. In numerous other matters I have noted that:

---

[5]   See, Roth v. US, 408 US 564 (1972).

[6]   See, Matter of Jerry v. Board of Education, 376 N.Y.S. 2d 737 (1975)

> *The Department of Education submits that the charges have been proven by the required preponderance of the credible evidence.[7] They further submit that the record upon which a § 3020(a) conviction rests must be "credible evidence."[8] The record as produced satisfies the quantum of evidence requirement inasmuch as the testimony, documentary evidence, and related materials rose to the requisite level. Additionally, since the penalty sought in the instant matter is that of termination, the case law requires that the charges must be "substantial and substantiated."[9]*

Concerning penalty it is the position of the District that Panse will never learn to follow District policy or their directives and as such he must be terminated from employment. They submit that the art course was designed for personal gain and that similar course work was available in private art schools. The record further notes that although Panse although received a prior written warning this is not the forum to adjudicate such letters. (TR- 354)

### PENALTY

As noted above the BOE has proven Specification One enumerated in Charge One by the preponderance of the credible evidence on the record. After having determined that the Respondent is guilty of one of the three specifications preferred against him, the remaining question is that of the appropriateness of the proposed penalty of termination. The BOE contends that they have satisfied the "just cause" requirements and that for Respondent's conduct during the school year 2005-2006 he must be terminated from service. They argue that the Respondent has violated District policy, has displayed continuous misconduct, was not truthful in his testimony, and has demonstrated no remorse whatsoever. It is the position of the BOE that the only applicable penalty in the instant matter is termination and no remediation is warranted. The record and the reported admissions by the

---

[7] See, Martin v. Ambach, 67 N.Y. 2d 975 (1986) See, also BOE CSD Schwartzberg 30 Educ. Department Rep. 445 (1991)

[8] See, BOE Indian Lake CSD, 31 Educ. Department Rep. 428 (1992)

[9] See, Matter of Bruno CSD No. 8 31 Educ. Department Rep. 503,(1992). See also, Matter of Cuoco CSD No. 22, 31 Educ. Department Rep. 95 (1991)

*Page 16 of 19*

Respondent documents that Panse is guilty of one of the three Specifications contained in the Charges and that just cause exists for the imposition of discipline. Respondent urges that if any penalty is prescribed, it must be minimal.

As repeatedly noted by myself and other Hearing Officers a §3020 (a) proceeding is fashioned to assess an individual's fitness to continue in a tenured position. If the cited misconduct is proven and falls into the category where summary discharge is mandated, then a proposed termination will be upheld and the Respondent dismissed from service. It is the position of the BOE that the Respondent engaged in conduct unbecoming his position and that the only appropriate penalty in this matter is termination. However, in the instant case, the misconduct committed does not rise to the level whereby the teacher has been rendered *de facto* unfit to continue in service and accordingly a lesser penalty will be imposed. Based upon the "preponderance of the credible evidence" standard as reaffirmed in Aronsky v. Board of Education, [75 N.Y.2d 997 (1990)] the level of proof proffered by the DOE satisfied the requisite quantum. Respondent asserts that if any penalty is warranted, it must be minimal.

With the exception of Charge One, Specification one, Panses' defenses were persuasive. Where there was a believability issue [Charge One, Specification Two and Charge Two] all credibility determinations were applied in favor of the Respondent. As contrasted with the testimony of the two students witnesses who were deemed credible, for the reasons cited above the testimony of District witnesses Kaplan, Segnit, and the Parent RT was considered evasive, vague and ambiguous. Of particular note was Kaplan's testimony. The fact that the District has anti harassment policies, protecting both students and teachers, was noted for the record and yet when counsel for Respondent asked Kaplan if she recalled students referring to Panse as "Peter Pansy," after considerable delay she did. At that point when Respondent's counsel asked Kaplan what a "Pansy" was, Kaplan responded that she thought it was some type of flower. (TR -213-214) This testimony was not credited.

The parties in a § 3023 (a) hearing do not engage a Hearing Officer to impose his own version of "industrial jurisprudence." Instead, they delegate the Hearing Officer with the responsibility of determining if the actions charged were proven and, if so, was the proposed penalty rational and rooted in the terms and conditions of employment. The record supports the finding that one Specification the charges were proven by the preponderance of the credible evidence on the record but that the proposed punishment of termination is unwarranted.

In Bott, Hearing Officers must assess whether a Respondent is able and qualified to discharge his professional responsibilities. [10] The record documents that Panse satisfies the Bott standard to continue in his position. Mitigation factors were considered in penalty assessment. In the Matter of Panse termination is not warranted. In addition the record supports the contention that mitigation is to be found in the fact that the offenses committed may reflect poor judgement but they are not termination transgressions. The record supports the contention that the misconduct proven in this proceeding does not render Panse *de facto* unsatisfactory to continue his teaching career. Although Respondents' professional judgement has been challenged, and while a penalty is being ordered, the charges and findings *per* se do not render Panse unfit to continue as a Middletown teacher. In the instant case, the judgement of the BOE was correct in terms of the imposition of discipline.

Having heard the allegations and proofs of the aforementioned parties, and based solely on the record in these proceedings, and by the preponderance of the credible evidence on the record, and consistent with the just cause standard I find the Respondent guilty of CHARGE One, Specification One. On the basis of the record and in full view of the evidence, the Hearing Officer finds that the appropriate penalty in this matter is the appropriate penalty in this matter is suspension without pay of fifteen work days. Panse is placed on notice that should any repetition of this type of misconduct occur, then further disciplinary charges may be preferred against him and that if found guilty the range

---

[10]   See Bott, 41 N.Y.S. ed 265, 360 N.E. 2d 952. Also, see Cooke 164 Misc. 78, 299 N.Y.S. 257.

*Page 18 of 19*

of penalties may include termination. In that event, this <u>Opinion and Award</u> will be considered as "constructive notice" and the imposition of progressive discipline.

Moreover, pursuant to the statutory requirement set forth in (4) (b) the undersigned finds that the charges set forth were not frivolous as defined in section eight thousand three hundred-a of the NYS CPLR. Based on the record and the evidence supplied the appropriate penalty is set forth below.

---

*Page 19 of 19*

1. The record evidence supports the finding that Respondent Panse is guilty of Charge One, Specification One. [DX #1A]

2. The record evidence supports the finding that Respondent Panse is not guilty of Charge One, Specification Two and Charge Two, Specification One.

3. The appropriate penalty is a suspension without pay of fifteen work days.

4. Ms. Panse is placed on notice that should any repetition of this type of misconduct occur, then further disciplinary charges may be preferred against him and that if found guilty the range of penalties may include termination. In that event, this _Award_ will be considered as "constructive notice" and the imposition of "progressive discipline."

JOEL M. DOUGLAS, Ph.D.
Hearing Officer
December 30, 2006

---

STATE OF NEW YORK
COUNTY OF WESTCHESTER

I, JOEL M. DOUGLAS, DO HEREBY AFFIRM UPON MY OATH AS ARBITRATOR THAT I AM THE INDIVIDUAL DESCRIBED IN AND WHO EXECUTED THIS INSTRUMENT WHICH IS MY AWARD.

JOEL M. DOUGLAS, Ph.D.
Hearing Officer
December 30, 2006

---

