Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 1999 WL 942425 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Bartley v. Artuz
S.D.N.Y.,1999.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Mark BARTLEY, et al., Plaintiffs,
v.
Christopher ARTUZ, et al., Defendants.
**No. 95 Civ. 10161(DAB).**

Oct. 19, 1999.

*MEMORANDUM & ORDER*
BATTS, J.
*1 Plaintiffs Jenitha Metts ("Metts"), in her individual capacity and as Administratrix of the Estate of Vincent Stokely, and Mark Bartley (" Bartley"), Felix Diaz ("Diaz"), Jay Johnson (" Johnson"), and Julio Perez ("Perez"), bring this consolidated action to recover damages pursuant to 42 U.S.C. §§ 1983 and 1988.

Plaintiff Metts, on behalf of the Stokely estate, seeks to recover for the alleged deliberate indifference to the Eighth Amendment rights of her now deceased brother, Vincent Stokely.[FN1] Metts brings Eighth Amendment allegations against Defendants Christopher Artuz ("Artuz"), Superintendent of Green Haven, Larry Zwillinger (" Zwillinger"), Health Administrator of Green Haven, Donald Stevens ("Stevens"), Registered Nurse Administrator (collectively "Administrative Defendants"), and Dr. Harold Mamis ("Dr.Mamis" ), staff physician at Green Haven.

> FN1. Stokely's § 1983 claim survives for the benefit of his estate. *Barrett v. U.S.,* 689 F.2d 324 (2d Cir1982) (applying state law N.Y. E.P.T.L. § 11-3.2(b)).

Plaintiffs Bartley, Diaz, Johnson, and Perez (collectively "Inmate Plaintiffs"), bring Fourteenth

Amendment claims against the Administrative Defendants and Green Haven Correctional Officers Todd Collins ("Collins"), Christopher Pecore (" Pecore"), Timothy Bates ("Bates"), and Michael Prusak ("Prusak") (collectively "Correctional Defendants") for alleged retaliation.

All Plaintiffs further allege that the Administrative and Correctional Defendants deprived them of their right of access to the courts secured by the First and Fourteenth Amendments.

Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs' request to convert Defendants' 12(b)(6) motion into a motion for summary judgment is denied.[FN2] For the foregoing reasons, Defendants' motion is GRANTED in part, and DENIED in part.

> FN2. Plaintiffs' first request to convert Defendants' motion was denied by order dated September 24, 1997. Nevertheless, in their motion papers, Plaintiffs renewed this request and attached several volumes of document exhibits. (Pls.' Mem. Law at 1-2; Ex. A-N). Defendants opposed the request for conversion as untimely in view of ongoing discovery disputes. (Defs.' Reply Mem. Law at 8-9).

I. BACKGROUND

The allegations in this action arise out of a fire, and related events, started by a mentally ill inmate of Green Haven Correctional Facility on April 16, 1995. (2d. Am.Compl.¶¶ 18, 30-33). At that time, Vincent Stokely and Plaintiffs Bartley, Diaz, Perez, and Johnson were all housed in G-block of Green Haven with the general inmate population. (Id. at 27-28).

Fellow inmate Scott Turrisi ("Turrisi"), was a diagnosed psychotic with a long history of mental

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page 2

Not Reported in F.Supp.2d, 1999 WL 942425 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

illness and suicidal tendencies. (2d. Am.Compl.¶ 18). During the 1980's, Turrisi suffered several emotional breakdowns and was admitted to a number of mental institutions. (Id.¶ 18(a)). His presentence report of November 4, 1992 warned that Turrisi had a "death wish" and that "if placed in a maximum security facility, the stress will lead him to continue acting out...." (Id.¶ 18(e)). During his November 16, 1992 sentencing, the judge recommended that Turrisi "needs continued medication, psychiatric help, and suicide watch." (Id.¶ 18(f)). Nevertheless, Turrisi was also housed in G-block with the general population. (Id.¶ 29).

On April 16, 1995, at approximately 2:30 a.m., Turrisi started a fire in his cell, setting fire to his clothing, mattress, papers and other flammable items, in an effort to kill himself. (2d. Am.Compl.¶ 30). He also cut his neck and foot and, according to the Complaint, began "screaming maniacally." (Id.).

**\*2** The fire in Turrisi's cell caused heavy smoke and fumes, from burning paint, to spread rapidly throughout G-block. (2d. Am.Compl.¶ 31). Because of the smoke and fumes engulfing the neighboring cells, Inmate Plaintiffs and other inmates began to call out for help. (Id. ¶ 32). Vincent Stokely shouted that he could not breathe and that his lungs were burning. (Id.).

Thirteen inmates, including Stokely and the Inmate Plaintiffs, were taken to the Green Haven Medical Clinic within the prison, and treated for smoke inhalation injuries. (2d Am.Compl.¶ 33). Two correctional officers were taken to an outside hospital emergency room and treated for the same smoke inhalation. (Id. ¶ 33).

### A. The Medical Violations

According to the second Amended Complaint, as a result of the fire, Stokely developed serious medical needs requiring immediate attention. (2d. Am.Compl.¶ 34). On April 17, 1995, Stokely visited the prison clinic complaining of shortness of breath. (Id. ¶ 35). Dr. Mamis examined Stokely and was aware that he had been involved in a fire involving heavy smoke and fumes. (Id. ¶¶

31,35,37). Dr. Mamis was also aware that thirteen inmates had been treated a day prior for smoke inhalation injury, including Stokely, and that two guards had been sent to an outside hospital emergency room for similar injuries. (Id. ¶¶ 33,37). Stokely's medical records indicate he had been "involved in fire in blk," that his voice was " hoarse," and that his throat exhibited "slight redness. " (Id. ¶ 36).

Dr. Mamis failed to diagnose or treat Stokely for smoke inhalation injury on April 17, 1995. (2d Am.Compl.¶ 38). Two days later, on April 19, 1995, Stokely died as a result of smoke inhalation. ( Id. ¶ 39). Plaintiff Metts claims that Stokely suffered pain and loss of life as a result of Dr. Mamis' failure to diagnose or treat Stokely for smoke inhalation injury. (Id. ¶¶ 38,40).

Plaintiff Metts cites to Dr. Mamis' past record of poor performance both at Green Haven and in private practice, to support her claim of deliberate indifference. (2d Am.Compl.¶¶ 19-24). On April 6, 1987, Dr. Mamis had admitted under oath that his gross negligence and incompetence in the practice of medicine caused the death of a young boy, prompting the State of New York to suspend his license to practice medicine for five years. (Id. ¶ 21). On May 18, 1988, the State of Massachusetts suspended Dr. Mamis' medical license indefinitely after a medical review board questioned his competence. (Id. ¶ 22). Dr. Mamis was hired as a physician at Green Haven on April 8, 1993. (Id. ¶ 23).

Furthermore, Plaintiff Metts alleges that Dr. Mamis' gross negligence and incompetence have constituted a substantial risk of serious harm to the inmates of Green Haven. (2d Am.Compl.¶ 24). According to the second Amended Complaint, Dr. Mamis' negligence has led to the unnecessary suffering and untimely deaths of at least three inmates. (Id. ¶ 24). Plaintiff Metts further claims Administrative Defendants Artuz, Zwillinger, and Stevens, had knowledge of Dr. Mamis' gross incompetence and failed to act, supervise, or remedy the situation, thus permitting grossly inadequate medical treatment at the facility leading to the untimely death of Vincent Stokely. (Id. ¶¶ 15,26).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3

Not Reported in F.Supp.2d, 1999 WL 942425 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

### B. Retaliation and Denial of Access to Courts

*3 According to the second Amended Complaint, the Administrative and Correctional Defendants, acting in concert, "planned and carried out" an illicit conspiracy to prevent Stokely's next-of-kin and various Green Haven inmates from seeking legal redress for injuries suffered as a result of the April 16, 1995 prison fire. (2d Am.Compl.¶¶ 42,45). Plaintiffs allege the conspiracy was motivated, in part, by the fact that two inmates with substantial legal knowledge (Bartley and Diaz) were injured in the fire, and that one or more of the inmates injured in the fire was known to be HIV positive and/or living with AIDS. (*Id.* ¶ 44). The Complaint alleges that Defendants had hoped that these inmates would die before they could bring suit. (*Id.*).

The alleged conspiracy included retaliation against inmates who had or were preparing to file lawsuits. (2d Am.Compl.¶ 45). Two days after the April 16, 1995 fire, Inmate Plaintiff Bartley alleges he was placed on "keeplock" [FN3] status and denied access to the prison law library on false charges of "littering" and other minor infractions in an effort to punish and deter him from researching and filing the present case. (Id.¶ 45(a)). Inmate Plaintiff Diaz alleges that the day after he collected affidavits from approximately five inmate witnesses to the April 16, 1995 fire, he was disciplined on false charges in an effort to punish and deter him from filing this action and a related action in state court. (Id.¶ 45(b)). Inmate Plaintiffs Diaz, Johnson, and Perez allege that shortly after their original Complaint in this case was filed on July 29, 1995, with the Pro Se Office, all three were transferred to different New York State correctional facilities in an effort to separate them and deter coordination of their legal efforts. (Id.¶ 45(c)).

> FN3. "Keeplock" status is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates. *See* 7 NYCRR § 251-1.6.

Inmate Plaintiffs and Plaintiff Metts further allege that the Administrative and Correctional Defendants concealed Vincent Stokely's death from his next-of-kin in an effort to keep her from filing suit on behalf of Stokely's Estate. (2d Am.Compl.¶ 45(d)). As a direct result of the alleged conspiracy, Plaintiffs claim they were unable to secure the deposition of Vincent Stokely before his death on April 19, 1995, and the Inmate Plaintiffs were forced to work separately on the several *pro se* lawsuits arising out of the April 16, 1995 fire. (*Id.* ¶ 47).

### II. PROCEDURAL BACKGROUND

Inmate Plaintiffs filed their original *pro se* Complaint with the Southern District of New York Pro Se Office on July 29, 1995. The case was filed with the Clerk of the Court on December 1, 1995. Thereafter, on August 13, 1996, counsel for Plaintiffs appeared and filed an Amended Complaint on October 25, 1996. On January 24, 1997, Inmate Plaintiffs' Amended Complaint was consolidated with the Complaint of Plaintiff Jenitha Metts. Finally, Plaintiffs filed a second Amended Complaint on June 25, 1997. Defendants submitted a motion to dismiss the second Amended Complaint now before the Court on October 14, 1997.

### III. DISCUSSION

*4 As a preliminary matter, the Court notes that both parties have offered extensive exhibits outside the pleadings.[FN4] However, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden, v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). None of the offered exhibits were attached to the second Amended Complaint.

> FN4. Defendants offered exhibits claiming they were appropriate on a 12(b)(6)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 4

Not Reported in F.Supp.2d, 1999 WL 942425 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

motion. Plaintiffs offered exhibits seeking a conversion of Defendants' 12(b)(6) motion to a motion for summary judgment. *See* n. 2, *supra.*

### A. Documents Incorporated Into the Complaint By Reference

Defendants have attached and argued that the full medical records of Vincent Stokely should be considered on this motion to dismiss because Plaintiffs referred to the records in the second Amended Complaint and relied upon them in bringing suit. (Defs.' Mem. Law at 5, n. 2 (citing *Cortec Indus. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2d Cir.1991))). In their Complaint, Plaintiffs briefly quote two entries from Stokely's medical records. (2d Am.Compl.¶ 36). While the two entries are dated April 16, 1995 and April 17, 1995, Defendants use Plaintiffs' eight word quotation as justification for attaching over 100 pages of medical records dating as far back as 1983. (Defs.' Mem. Law at 5 n. 2). However, Stokely's full medical records were not referred to in the second Amended Complaint, it is not clear the documents were relied upon in drafting the Complaint, nor do the full medical records appear integral to the Complaint. *See Cortec.* at 48. Consequently, the full medical records submitted by Defendants have not been considered in determining Defendants' 12(b)(6) motion.

The final question remaining is whether the eight words from the text of the two medical entries of April 16 and 17, 1995, quoted in the second Amended Complaint, require considering those entries in their entirety. (2d Am. Compl. ¶ 36; Defs.' Ex. Al at 1146-47). According to the emerging rule in this Circuit, a district court may consider the full text of a document partially quoted in the complaint where, as here, Plaintiffs have notice of the document's contents and the document is integral in drafting the complaint. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808-09 (2d Cir.1995) (recognizing the "somewhat uneven course" of Circuit case law and crediting more recent case law permitting consideration of the full text of partially quoted documents in limited

circumstances). As discussed *infra,* the medical entries are integral to Plaintiffs' asserted claim of deliberate indifference.

However, where a court reviews supplementary material on a motion to dismiss, the court must read an appended document "to evidence what it incontestably shows." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 674 (2d Cir.1995). The appended documents in this case tend show that medical records were kept concerning Vincent Stokely's health, a point not disputed by either party. The entries contain illegible notations in several different handwritings. Consequently, the documents, by themselves, do not establish who knew what about Stokely's health, or when. Under these circumstances, consideration of the entries in their entirety would only serve to confuse the issues in this case. Thus, the Court has elected not to consider the attached medical entries of April 16 and 17, 1995 in determining this motion to dismiss.

### B. Standard for a Motion to Dismiss

*5 In deciding a Rule 12(b)(6) motion, the Court must read the complaint generously, accepting as true the factual allegations in the complaint and drawing all inferences in favor of the pleader. *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). The District Court should grant such a motion only if after viewing Plaintiff's allegations in this favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v.. City of New York,* 974 F.2d 293 (2d Cir.1992), *cert. denied,* 507 U.S. 961 (1993); *see also, Hayden,* 180 F.3d at 47, (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). Because a 12(b)(6) motion is used to assess the legal feasibility of a complaint, a Court should not "assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merril Lynch Commodities, Inc.,* 748 F.2d 774, 779 (1984). Accordingly, the factual allegations set forth and considered herein are presumed to be true for the purpose of deciding the motion to dismiss.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

Not Reported in F.Supp.2d, 1999 WL 942425 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of his constitutionally protected rights, privileges or immunities.[FN5] *See Butz v. Economou,* 438 U.S. 478, 498-99 (1978); *Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir.1995) (per curiam). Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' *Bell v. Artuz,* No. 98 Civ. 4710, 1999 WL 253607, at *3 (S.D.N.Y. Apr. 29, 1999) (quoting *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987)).

> FN5. Section 1983 of Title 42 provides, in relevant part:
> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

### C. Deliberate Indifference Claims

"An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met ." *West v. Atkins,* 487 U.S. 42, 43 (1988) (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). "In light of this, the [Supreme] Court has held that the State has a constitutional obligation under the Eighth Amendment to provide adequate medical care to those whom it has incarcerated." *West,* 487 U.S. at 53 (internal citations omitted).

For Vincent Stokely's Estate to claim successfully that Defendants violated their constitutional obligation under the Eighth Amendment, Plaintiff must demonstrate that Defendants were deliberately indifferent to his medical needs. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991), *Hathaway v. Coughlin,*

99 F.3d 550, 553 (2d Cir.1996). Deliberate indifference is generally established through objective and subjective standards: "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists. Subjectively, the charged official must act with a sufficiently culpable state of mind." *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) (citing *Hathaway,* 99 F.3d at 553 (2d Cir.1996)). "A sufficiently culpable state of mind, equivalent to criminal recklessness, is that the official, 'know[s] of and disregard[s] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

**\*6** Plaintiff Metts alleges Dr. Mamis and the Administrative Defendants were deliberately indifferent to her brother Vincent Stokely's serious medical needs resulting in his unnecessary death. Plaintiff alleges that Stokely died as a result of Defendants' deliberate indifference. Clearly, a condition causing imminent death of an inmate is sufficiently serious to meet the objective prong of the deliberate indifference standard. The remaining question is the degree of culpability of the named Defendants.

### 1. Defendant Dr. Mamis

Vincent Stokely visited Dr. Mamis in the Green Haven clinic complaining of shortness of breath on April 17, 1995, one day after the fire in G-Block. Dr. Mamis was aware that Stokely had been involved in a fire causing serious smoke inhalation injury to other inmates and guards. Despite having this knowledge, Dr. Mamis neither diagnosed nor treated Vincent Stokely for smoke inhalation injury. Stokely died two days later on April 19, 1995.

Defendants assert that the events described can rise, at best, to a claim of medical malpractice or negligent misdiagnosis, neither of which is enough to state a constitutional claim of deliberate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 6

Not Reported in F.Supp.2d, 1999 WL 942425 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

indifference. (Def.'s Mem. Law at 15 (citing *Estelle*, 429 U.S. at 106)). Alternatively, Defendants raise a qualified immunity defense.

A government official enjoys qualified immunity when he or she performs discretionary duties if either (1) the conduct does not violate a clearly established right of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights. *McCullough v. Wyandanch Union Free School Dist.*, 187 F.3d 272, ___, 1999 WL 592250 at *4 (2d Cir.1999).

Plaintiff argues that the qualified immunity defense does not protect officials who are "plainly incompetent." *Weyant*, 101 F .3d 845, 858 (2d Cir.1996). Plaintiff raises Dr. Mamis' history of licensing problems with the medical boards of two different states and his alleged callous disregard for other Green Haven inmates to suggest Dr. Mamis' medical incompetence.

Without reaching the question of Dr. Mamis' competence to practice medicine, the Court notes that evidence of other similar incidents, admissible under Rules 404(b) and 403 of the Federal Rules of Evidence, may be sufficient to overcome a qualified immunity defense. *Cf. Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir.1990) (evidence of subsequent similar incident to show pattern, intent, and absence of mistake); *O'Neill v. Krzeminksi*, 839 F.2d 9, 10 n. 1 (2d Cir.1988) (same with respect to prior incident). Furthermore, circumstantial evidence may overcome a qualified immunity defense when used to support a reasonable inference of deliberate indifference to serious medical needs. *See Weyant v. Okst*, 101 F.3d 845, 856-57 (2d. Cir.1996); *Hathaway v. Coughlin*, 841 F.2d 48, 49 (2d Cir.1988). Given the timing of events and Dr. Mamis' history of licensing problems with the medical boards of two different states, Dr. Mamis' failure to diagnose and treat Stokely could raise a colorable inference of culpability. Plaintiff should be permitted to present evidence in support of her claim of deliberate indifference. Consequently, Defendants' motion to dismiss as to Dr. Mamis is DENIED.

### 2. *Defendants Artuz, Zwillinger, and Stevens*

*7 To be found liable under § 1983 principles of supervisory responsibility, a prison administrator must be personally involved in the constitutional deprivation in one or more of the following ways:
1) defendants participated directly in the alleged constitutional violation;
2) defendants, after being informed of the violation through a report or appeal, failed to remedy the wrong;
3) defendants created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such policy or custom;
4) defendants were grossly negligent in supervising subordinates who committed the wrongful acts;
5) defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (citing *William v. Smith*, 781 F.2d 319, 323-24 (2d Cir.1986)).

Plaintiff Metts alleges that the Administrative Defendants acted with deliberate indifference by ignoring the numerous "red flags" concerning Dr. Mamis, and as a result, they too are responsible for Dr. Mamis' underlying constitutional violations. (Pl.'s Mem. Law at 16). Specifically, Plaintiff alleges that the Administrative Defendants acted with deliberate indifference by (1) "failing to remedy" the "severe clinical failings of Dr. Mamis" after being informed; (2) creating a policy or custom permitting "grossly inadequate medical treatment" provided by Dr. Mamis; (3) failing to adequately supervise Dr. Mamis; and (4) failing to act on information indicating that the "medical care administered by Dr. Mamis constituted a substantial risk of serious harm to Green Haven inmates." (2d Am.Compl.¶ 26).

Administrative Defendants Artuz, Zwillinger, and Stevens offer two theories to support their claim of qualified immunity, both equally unreasonable. Defendants assert that the medical care provided at Green Haven is actively supervised by a Medical Auditor pursuant to the court-ordered "Milburn Consent Decree." (Defs.' Mem. Law at 19).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7

Not Reported in F.Supp.2d, 1999 WL 942425 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Consequently, because of the presence of a court-ordered medical auditor and because none of the Defendants are medical doctors, each claims he should be absolved of all supervisory responsibility of medical services at Green Haven and entitled to qualified immunity.

The Court first observes that the Milburn Consent Decree, apparently required because of Green Haven's grossly inadequate history as a medical provider, is a matter outside the pleadings. Thus, the Court cannot consider it on this motion to dismiss. *See supra.* Defendants' claim that they had no power to supervise a doctor because they lacked medical training is preposterous. Any belief by the Administrative Defendants that they lacked supervisory responsibility over the medical services at Green Haven is not objectively reasonable. Thus, the qualified immunity defense must fail. *See McCullough* at *4.

*8 Plaintiff Metts alleges the Administrative Defendants were informed of the threat to inmate safety presented by Dr. Mamis' grossly inadequate medical services. Metts claims their failure to remedy the situation led to the untimely death of her brother. Plaintiff has stated a claim for deliberate indifference. Defendants' motion to dismiss the deliberate indifference claims against the Administrative Defendants Artuz, Zwillinger, and Stevens is DENIED.

### D. Retaliation Claims

The standard for pleading retaliation is high because, as the Second Circuit has recognized, retaliation claims by prisoners are "prone to abuse" as "[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). To establish a claim of prison official retaliation, a party must allege: (1) the inmate was engaged in a constitutionally protected activity; and (2) that this protected conduct was the motivating factor in the subsequent decision to act against the inmate. *Majid v. Henderson,* 533 F.Supp. 1257, 1270 (N.D.N.Y.1981), *aff'd,* 714 F.2d 115 (2d Cir.1982). *See also Hilliard v. Scully,* 648 F.Supp. 1479, 1487

(S.D.N.Y.1986); *Respress v. Coughlin,* 585 F.Supp. 854, 858 (S.D.N.Y.1984).

Inmate Plaintiffs allege that each experienced retaliation as a result of efforts to prepare and file this case and other related state court actions arising from the April 16, 1995 fire. Inmate Plaintiff Bartley, who was injured in the fire and was considered to have substantial legal knowledge, alleges he was "keeplocked" on false charges of littering just two days after the fire in order to prevent his access to the prison law library to research and prepare this case. Inmate Plaintiff Diaz, also an injured inmate with alleged legal knowledge, claims he was disciplined on false charges after he collected five affidavits from inmate witnesses to the April 16, 1995 fire. Inmate Plaintiffs Diaz, Johnson, and Perez allege that they were each subjected to a retaliatory transfer shortly after they filed this action *pro se* on July 29, 1995.

The law is clear that a prison official who retaliates against an inmate for petitioning the government for the redress of grievances violates the inmate's constitutional right of access to the courts. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). Inmate Plaintiffs' activities in preparing their lawsuits were constitutionally protected. *See Graham v. R.J. Henderson,* 89 F.3d 75 (2d Cir.1996) (prison inmate alleged retaliation for his gathering names in preparation for filing grievance); *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988) (claim stated where prison inmate alleged retaliation for his cooperation with investigation of inmate abuse). The filing of false charges and retaliatory transfers are precisely the type of prison official retaliation barred by § 1983. *See Id.; Meriwether v. Coughlin,* 879 F.2d 1037, 1046 (2d Cir.1989) ("[r]etaliatory transfers [are] clearly illegal").

*9 Under the circumstances, Plaintiffs have alleged facts sufficient to support an inference of motivation to retaliate for inmate legal filings. *McCullough,* at *6 (citing *Colon v. Coughlin,* 58 F.3d 865, 872-73 (2d Cir.1995) (timing of events may be circumstantial evidence of retaliatory motive). Thus, Defendants' qualified immunity defense must fail.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 8

Not Reported in F.Supp.2d, 1999 WL 942425 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

The flaw in Inmate Plaintiffs' retaliation claim is their failure to allege Defendants' personal involvement in any of the retaliatory acts. In place of individual involvement, Inmate Plaintiffs claim that all nine Administrative and Correctional Defendants "planned and carried out" each of the retaliatory acts, "acting in concert" through an " illicit conspiracy." (2d Am.Compl.¶ 45). However, to state a conspiracy claim, pursuant to 42 U.S.C. § 1983, Plaintiffs must state the claim with specificity, *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), making more than simply "[d]iffuse and expansive allegations." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Plaintiffs must allege " specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end ." *Julian v. NYC Transit Authority,* 857 F.Supp. 242, 252 (E.D.N .Y.1994), *aff'd,* 52 F.3d 312 (2d Cir.1995). Plaintiffs have failed to allege specific facts to support a claim for conspiracy.

Plaintiffs also suggest that each Defendant had a responsibility to prevent the unconstitutional acts of other officers. Such a claim must fail because personal involvement in alleged constitutional deprivations is a prerequisite to a § 1983 claim. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

In order to prevail against any Defendant in this action, Plaintiffs must prove that that Defendant was personally involved in the constitutional violation. *Hemmings v. Gorczyk,* 134 F.3d 104, 109 n. 4 (2d Cir.1997). Accordingly, Inmate Plaintiffs shall file a third Amended Complaint within thirty (30) days, limited to the claim of retaliation, specifying the acts of which they complain as to each Administrative and Correctional Defendant. *Id.* If Plaintiffs fail to allege conduct as to each Defendant sufficient to state a claim of personal involvement in retaliatory acts, the retaliation claim shall be dismissed as to that Defendant.

### E. Access to the Courts Claims

"[P]risoners have a constitutional right to petition the government for redress of their grievances, which includes a reasonable right of access to the courts." *Hudson v. Palmer,* 468 U.S. 517, 523 (1984). Furthermore, an inmate establishes violation of constitutional right of access to courts by showing that "a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis v. Casey,* 64 U.S.L.W. 4587, 4589 (1996). To state a § 1983 claim for denial of access to the courts, Inmate Plaintiffs must allege actual interference with their access to the courts or prejudice of an existing action. *See Herrera v. Scully,* 815 F.Supp. 713 (S.D.N.Y.1993).

*10 Plaintiff Metts (on behalf of the Estate of Vincent Stokely) and the Inmate Plaintiffs allege that there was a conspiracy to cover up the circumstances of Stokely's death by all the Defendants (save Dr. Mamis) in order to deny their meaningful access to the courts. Plaintiffs allege that this "cover up" prevented them from securing an affidavit from Vincent Stokely before his death and forced them to work separately on their various *pro se* litigations due to retaliatory transfers. Plaintiffs make no allegation that Defendants prevented an affidavit of Vincent Stokely in the days after the fire. Furthermore, the "keeplock" and transfer incidents as well as the alleged initial lack of disclosure as to Stokely's cause of death, though they may have delayed legal proceedings, do not rise to the level of a constitutional violation. *See Pickett v. Schaeffer,* 503 F.Supp. 27 (S.D.N.Y.1980) . Finally, Plaintiffs fail to alleged the specificity required to establish a conspiracy claim or the requisite personal involvement of each Defendant. All claims for denial of access to the courts are hereby dismissed, with leave to amend, again within thirty (30) days of this Memorandum and Order.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS, without prejudice, Defendants' motion to dismiss Plaintiffs' retaliation and access to courts claims pursuant to 12(b)(6) Fed.R.Civ.P., with leave to amend. Plaintiffs are instructed to submit a third Amended Complaint only as to the retaliation and access to courts claims, as discussed *supra,* within thirty (30) days of this Order. If Plaintiffs fail to submit an Amended Complaint as to the above

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 9

Not Reported in F.Supp.2d, 1999 WL 942425 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

claims, within that time period, those claims shall
be dismissed with prejudice. The remainder of
Defendant's 12(b)(6) motion is DENIED.

S.D.N.Y.,1999.
Bartley v. Artuz
Not Reported in F.Supp.2d, 1999 WL 942425
(S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2001 WL 1246581 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Dauber v. Board of Educ. of City of New York
S.D.N.Y.,2001.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Deanna DAUBER, Plaintiff,
v.
THE BOARD OF EDUCATION OF THE CITY
OF NEW YORK, Rudolph Giuliani, Mayor of the
City of New York, Rudolph Crew, Chancellor of
the Board of Education of the City of New York,
Lester W. Young, Rosalie Schwartz and Carolyn
Philips, Defendants.
**No. 99 CIV. 3931(LMM).**

Oct. 18, 2001.

MEMORANDUM AND ORDER
MCKENNA, D.J.

INTRODUCTION

*1 Plaintiff Deanna Dauber ("Dauber"), a tenured
teacher at P.S. 9, an elementary school in New York
City, brings suit under 42 U.S.C. § 1983 against the
following parties: her employer, the New York City
Board of Education ("Board of Education"); former
Chancellor Rudolph Crew ("Crew"); the former
principal of P.S. 9, Rosalie Schwartz ("Schwartz");
the superintendent of Community School District
13, Lester W. Young ("Young"); and assistant
principal and acting principal of P.S. 9, Carolyn
Phillips ("Phillips"). [FN1] Based upon facts arising
from a number of separate incidents, Dauber claims
that defendants: (1) subjected her to a prior restraint
and thereby impermissibly chilled her First
Amendment right to speech; (2) retaliated against
her for exercising her First Amendment rights; (3)
violated her procedural and substantive due process
rights; and (4) violated her rights under 42 U.S.C. §
1985. She has joined various state law claims.

FN1. Plaintiff withdrew her claims against
Mayor Giuliani.

Plaintiff moves for partial summary judgment
against defendant Schwartz on her prior restraint
claim, and against defendants Young and Phillips
on her procedural due process claim. Defendant
moves for summary judgment as to all of plaintiff's
claims.

For the reasons stated below, plaintiff's motion is
denied, and summary judgment is granted in favor
of all defendants on the prior restraint claim, with
the exception of Schwartz. Summary judgment is
also granted in favor of all defendants on the First
Amendment retaliation claim, the due process
claims, the § 1985 claims and the state law claims.

STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted only "if the
pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits,
if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to
a judgment as a matter of law." Fed.R.Civ.P. 56(c);
*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).
A dispute regarding a material fact is genuine "if
the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." *Anderson
v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "
If reasonable minds could differ as to the import of
the evidence," summary judgment is inappropriate.
*Id.* at 250.

In evaluating the record to determine whether there
is a genuine issue as to any material fact, "[t]he
evidence of the non-movant is to be believed, and
all justifiable inferences are to be drawn in [her]
favor." *Anderson,* 477 U.S. at 255 (1986). "If, as to
the issue on which summary judgment is sought,
there is any evidence in the record from any source
from which a reasonable inference could be drawn

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2001 WL 1246581 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

### DISCUSSION

#### I. Prior Restraint in Violation of the First Amendment

Plaintiff moves for summary judgment against defendant Schwartz, on her claim that Schwartz subjected plaintiff to a prior restraint of her protected speech by requiring that all of plaintiff's correspondence with Community School District 13 be reviewed by Schwartz. Defendant moves for summary judgment on this claim as regards all defendants.

#### Facts Regarding Prior Restraint Claim

**\*2** The facts relating to plaintiff's prior restraint claim are as follows: Dauber was told on or about December 9, 1996 that she would receive funding for teaching supplies pursuant to Title I, a federally funded program. (Dauber Aff. ¶ 14.) She did not receive the funds, and on December 15, 1996, Dauber sent a letter to Jerrilyn Burton ("Burton"), the Title I coordinator at Community School District 13. (Dauber Aff. ¶ 15.) In that letter, she complained that she had not received funds for necessary teaching material for six years, and that a previous request for funds to purchase materials with which to prepare her students for a statewide standardized test had been denied. Dauber also identified the supplies that she needed. (Dauber Aff. ¶¶ 15-16.)

In March 1997, Dauber sent a follow-up letter to Burton, complaining that she still had not received the funding, (Dauber Aff. ¶¶ 18-19), and expressing her suspicions that funds earmarked for science programs were being diverted to office furniture and "blown up photos that have been professionally mounted." She expressed concern that her students would not be able to pass a state test if they had not been exposed to at least twenty percent of the material. (Dauber Aff. ¶ 19.)

On March 5, 1997, Schwartz, the principal of P.S. 9, sent a letter to Dauber which stated, "All correspondence with District personnel must be reviewed by me before being sent. There are no exceptions." The letter also stated, "You are once again directed to follow the chain of command regarding communication with District personnel." " Your action of sending a letter to the district office requesting an investigation of P.S. 9's use of Title I funds constitutes libel on your part, and is insubordinate behavior toward me, your immediate supervisor." (Schwartz Decl. Exh. K.)

Plaintiff claims that because of Schwartz's letter she has been afraid to communicate with District 13 personnel regarding any professional matter. (Dauber Aff. ¶ 27.) Dauber engaged in some correspondence after the imposition of the alleged restraint. She wrote a letter to Schwartz on March 16, 1997, and sent a copy of this letter to the United States Department of Education Secretary. (Pl.'s Dep. at 220-21.) Plaintiff also wrote to former Chancellor Crew and Mayor Rudolph Giuliani about Schwartz's March 5.1997 letter. (Def.'s 56.1 Statement ¶¶ 62-63.)

A copy of plaintiff's letter to Crew was forwarded by the Chancellor's office to Young, who wrote a letter to plaintiff on November 13, 1997, stating, " With respect to school employees sending correspondence to the superintendent, please be advised that the use of school stationary requires both the review and the official approval of the building principal. If however, the correspondence is on private stationary no principal approval is required." (Young Decl. ¶ 31 & Exh. J.)

#### Discussion of Prior Restraint Claim

"Persons do not relinquish their first amendment protections to comment on matters of public interest by becoming public employees." *Piesco v. City of New York, Dep't of Personnel,* 933 F.2d 1149, 1155 (2d Cir.1991). However, the state also has an interest as an employer in regulating the speech of its employees to promote the efficiency of public

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2001 WL 1246581 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

services performed by its employees. *Connick v. Myers*, 461 U.S. 138, 140 (1983). Courts must balance these interests. *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968).

*3 Plaintiff's correspondence with Burton is protected speech under the First Amendment because the correspondence, which concerned the education of children and the allocation of school funds, dealt with a matter of public concern. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) (allocation of school funds between athletics and education is matter of legitimate public concern). This determination is a question of law to be decided by the court and is "determined by the content, form, and context of a given statement as revealed by the whole record." *Connick*, 461 U.S. at 147-48. Plaintiff was seeking to bring to light " actual or potential wrongdoing or breach of public trust." *Id.* at 148. This is not to assume that every matter concerning the administration of the school system is a matter of public concern. For example, it is unlikely that correspondence concerning internal school affairs such as class scheduling would constitute an issue of public concern.

Once it has been established that the speech at issue is protected, plaintiff must show that she faced or faces a prior restraint in order to succeed in her claim. "The essence of prior restraints are that 'they g[i]ve public officials the power to deny use of a forum in advance of actual expression.' " *Beal v. Stern*, 184 F.3d 117, 124 (2d Cir.1999) (citation omitted). "Only where the government imposes a requirement of advance approval or seeks to enjoin speech can there be prior restraint." *Dial Info. Servs. Corp. v. Thornburgh*, 938 F.2d 1535, 1543 (2d Cir.1991). The mere subjective sense that one's speech is chilled, without evidence of actual chilling, is not enough to survive summary judgment. *Carlucci v. Kalsched*, 78 F.Supp.2d 246, 254 (2d Cir.2000); *Spear v. Town of W. Hartford*, 964, F.2d 63, 67 (2d Cir.1992).

Defendants argue that Schwartz's letter dated March 5, 1997 did not constitute a prior restraint because the letter neither prohibited plaintiff from communicating with officials other than District 13 personnel, nor prohibited oral communications with

such personnel. (Def.'s Mem. Supp. Summ. J. at 10.) The letter, according to defendants, concerns a standard administrative practice. (Id.) Defendants also point out that Young advised plaintiff that no principal approval is needed with respect to school employees sending correspondence to any employee in the superintendent's office on private stationary. (Young Decl. ¶¶ 31-32 & Exh. J.)

Plaintiff alleges that she was actually restrained because out of fear of discipline she has not communicated with any District 13 personnel about the missing funds since receiving Schwartz's letter. She asserts that all of the letters she wrote to various Board of Education personnel and legislators dealt solely with the restraint placed upon her. (Dauber Aff. ¶¶ 26-27.) Plaintiff believed that Young's letter "lifts part of the restraint," but interpreted the letter to mean that she could write only to Young. (Pl.'s Dep. at 233-36, Def.'s 56.1 Statement ¶ 66.)

### 1. Schwartz

*4 Plaintiff's evidence of actual chilling is enough to defeat defendants' motion for summary judgment as concerns Schwartz. Plaintiff has made a colorable showing that Schwartz imposed a prior restraint on her speech. However, since contradictory evidence exists, this issue cannot be resolved on a summary judgment motion. Both plaintiff's and defendants' motions for summary judgment on the prior restraint claim as concerns Schwartz are denied.

### 2. Young and Phillips

Plaintiff makes no allegations that defendants Young or Phillips contributed to the chilling of her speech. Therefore plaintiff's claims against these defendants must be dismissed.

### 3. Board of Education and Chancellor Crew

The claim against defendant Board of Education and Chancellor Crew in his professional capacity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 4

Not Reported in F.Supp.2d, 2001 WL 1246581 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

must be dismissed as a matter of law. In order to hold the municipality liable for the acts of its employees, plaintiff must show that the municipality has a policy or custom which causes the deprivation of his civil rights. *City of Canton v. Harris,* 489 U.S. 378 (1989). A municipality cannot be held liable on a § 1983 claim solely on a theory of respondiat superior. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 568, 694-95 (1978). In order to succeed, plaintiff must demonstrate "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation," and must show that the municipal policy was the "moving force [behind] the constitutional violation." *Canton,* 489 U.S. at 385, 389. It is necessary for the plaintiff to allege facts that a municipality has such a custom. *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). This requirement also applies to suits against municipal officials in their official capacity. *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff fails to allege that the Board of Education or Crew has a custom or policy of infringing employees' free speech rights. Plaintiff asserts in her Reply that "Schwartz did not invoke any 'standard administrative practice' when she told [plaintiff] of 'the need to follow the chain of command.' " (Pl.'s Reply at 3.) Plaintiff also fails to allege that Crew was personally involved in the alleged events; therefore, claims against him in his personal capacity must be dismissed. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Plaintiff's motion for partial summary judgment as to Schwartz is denied, and defendants' motion for summary judgment is denied as to Schwartz and granted as to the other defendants.

*II. First Amendment Retaliation Claim*

Plaintiff claims that she was subject to First Amendment retaliation for her speech regarding the asbestos problems in New York City schools. Defendants move for summary judgment.

*Facts Regarding Retaliation Claim*

The following facts are presented in the light most favorable to the plaintiff. In June 1990, plaintiff filed a civil action on behalf of children attending New York City public schools concerning the presence of asbestos in the schools. In September 1993, she attended a parent meeting regarding school closings due to the presence of asbestos. At the meeting, plaintiff alleges that she informed Young that test results regarding asbestos at P.S. 9 were available. (Pl.'s 56.1 Statement ¶ 2.) As a result of this speech, plaintiff alleges that the various defendants retaliated against her.

*5 First, Schwartz's alleged retaliatory actions from June 1990 through September 1998, consisted of the following: (1) depriving plaintiff of a lunch period on a single day in 1992 (Dauber Aff. II ¶ 48); (2) writing a negative evaluation of plaintiff in November 1993 (Dauber Aff. II ¶ 58); (3) pursuing two corporal punishment complaints filed against plaintiff by relatives of the students (Dauber Aff. II ¶¶ 59-60); (4) maintaining a secret file on plaintiff in 1995 (Dauber Aff. II ¶ 68); (5) preparing a letter on March 1, 1996 containing a description of an incident in which plaintiff left her classroom to call the precinct about purloined supplies, which plaintiff describes as "exaggerated" (Dauber Aff. II ¶ 66); (6) placing a negative letter in plaintiff's file regarding an improper permission slip (Dauber Aff. II ¶ 70); and (7) preventing plaintiff from distributing flyers to teachers at school by telling her that she did not have permission to distribute flyers. (Pl's Am. Compl. ¶ 17.)

Second, Young requested a medical evaluation of plaintiff in February 1998. (Dauber Aff. II ¶¶ 32-35.) In addition, in 1998, Phillips wrote a letter to plaintiff about an incident where a parent complained to Phillips about photographs plaintiff had taken of her son. A copy of the letter was placed in plaintiff's file. (Dauber Dep. at 146.) In February 1998 Phillips wrote a letter to plaintiff regarding plaintiff's impetigo condition, and wrote to Young to request a medical evaluation of plaintiff. (Dauber Aff. II ¶¶ 85-88.) Plaintiff describes Phillips as having "a severe personal dislike" of plaintiff. According to plaintiff Phillips " absolutely delighted in subjecting [plaintiff] to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1246581 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

harassment." (Pl.'s Reply Aff. ¶¶ 82-83.)

Finally, plaintiff claims that the Board of Education refused to reimburse plaintiff for an injury (Dauber Dep. at 249), and plaintiff's teaching supplies and more than 200 books were thrown away (Dauber Aff. ¶ 7).

### Statute of Limitations Regarding Retaliation Claim

Defendants allege that plaintiff's federal claims concerning incidents which occurred prior to May 1995 are barred by the three year statute of limitations for bringing § 1983 claims in New York State. *Owens v. Okure,* 488 U.S. 235, 236 (1989). Plaintiff argues that these incidents constitute a continuing violation and therefore the claims are not time-barred. Under the continuing violation exception, a plaintiff who files a timely charge about an act committed in furtherance of an ongoing policy will extend the limitations period for all claims committed under that policy. *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997). The continuing violation exception has been recognized in § 1983 cases for retaliatory conduct as well as in discrimination cases. *Crosland v. City of New York,* 140 F.Supp.2d 300, 307 (S.D .N.Y.2001).

To show a continuing violation requires more than allegations of numerous incidents. "Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation. " *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). Incidents which "are unrelated to an identifiable policy or practice" do not provide a basis for finding a continuing violation "unless such incidents are specifically related." *Lightfoot,* 110 F.3d at 907 (quoting *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 173 (2d Cir.1996)). Specific policies include discriminatory seniority lists or employment tests. *Van Zant,* 80 F.3d at 713.

*6 Plaintiff fails to come forward with evidence that demonstrates that these discrete incidents occurred pursuant to a retaliatory policy. The acts alleged were perpetuated by different actors, different in

kind, and motivated by different reasons. Therefore, the Court finds that they should be regarded as individual violations. As a result, all of plaintiff's pre-1995 federal claims are time-barred.

### Discussion of Retaliation Claim for Post-1995 Incidents

To make out a § 1983 claim based on First Amendment retaliation, a plaintiff must first demonstrate that she engaged in speech that was constitutionally protected, an issue that the parties do not dispute in this action. *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999).

Second, the plaintiff must show that an "adverse employment action" was taken against her that affected her employment in a detrimental and substantial way. *Boylan v. Arruda,* 42 F.Supp.2d 352, 354 (S.D.N.Y.1999). An adverse employment action includes discharge, disciplining, and any action that affects "promotions, transfers and recalls after layoffs." *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 75 (1990).

Third, plaintiff is required to show there is a causal connection between the protected speech and the adverse employment action. *Morris,* 196 F.3d at 110 . The speech must be "at least a substantial or motivating factor" in the employer's adverse action. *Heil v. Santoro,* 147 F.3d 103, 109 (2d Cir.1998).

Plaintiff's alleged instances of retaliation are trivial, even taking into account the pre-1995 incidents the Court dismissed as time barred, and did not significantly impact her employment as a teacher. She has not been subjected to any formal discipline. The Second Circuit in *Bernheim v. Litt* held that a plaintiff had established adverse employment action where the plaintiff could show that defendant had sent negative evaluation letters, made express accusations of lying, assigned lunchroom duty and reduced plaintiff's class preparation periods, in addition to other actions. 79 F.3d 318, 324-26 (2d Cir.1996). *Bernheim* is distinguishable from the current case, in which each defendant's actions in aggregate, even when viewed in the light most favorable to plaintiff, do not rise to the level of a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 6

Not Reported in F.Supp.2d, 2001 WL 1246581 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

demotion.

With regard to her claims against the Board of Education, plaintiff alleges a municipal policy of retaliating against employees who are critical, but does not provide any evidence to support this vague allegation. She claims that there is a policy of maintaining secret files on teachers deemed to be troublemakers (Dauber Dep. at 132), but the existence of such files, without more, cannot constitute a retaliatory measure.

Because the Court finds that there was not adverse employment action, the Court need not examine whether there is a causal connection between the action and the protected speech. Defendants' motion for summary judgment on plaintiff's First Amendment retaliation claim is granted.

### III. Procedural Due Process

*7 Plaintiff alleges that defendants violated procedural due process by failing to abide by the process requirements of the Board of Education's collective bargaining agreement ("CBE") with the United Federation of Teachers. Plaintiff moves for partial summary judgment against Young and Phillips based on their violation of plaintiff's procedural due process rights as guaranteed by the Fourteenth Amendment. Defendants move for summary judgment in favor of all defendants.

### Facts Regarding Procedural Due Process Claim

The facts relating to plaintiff's due process claim are as follows: In February 1998, plaintiff learned that she had an impetigo condition on her mouth.[FN2] (Dauber Aff. ¶ 31.) The rash was very noticeable, and plaintiff told her students allegedly in jest, "Do I have to kiss you to make you stand in line?" (Dauber Aff. ¶¶ 32-33.) On February 3, Phillips sent correspondence to Young requesting that plaintiff be subjected to medical evaluation, and on February 9, Young directed plaintiff to report to his office on February 11. (Dauber Aff. ¶¶ 35-36, 39.) Plaintiff asserts that her due process rights were violated when Phillips failed to provide notice to plaintiff that she was requesting a medical exam, and when Young summoned plaintiff to his office without notice of the reasons for the summons. The CBE, Art. 21, § B(2) requires a "statement of the reasons for the summons," and requires that the immediate supervisor requesting a medical evaluation furnish a copy of the request to the affected teacher. (Pl.'s Mem. of Law Supp. Summ. J. at 5.)

> FN2. Impetigo is a bacterial infection which invades the upper layer of the skin, usually only contracted on direct contact.

Plaintiff asserts that she was denied a meaningful hearing with Young before being referred for a medical examination because she was not permitted to present a defense and because the decision to have her examined was made before her hearing. (Pl.'s Mem. of Law Supp. Summ. J. at 5.)

On February 16, plaintiff advised Phillips that she would undergo a physical, but not psychological, evaluation (Dauber Aff. ¶¶ 45-46), and on March 4 she received a letter requiring her to report for an exam on March 11. On that date she reported to the Medical Bureau where she allegedly first learned that she would be required to undergo a psychological exam. (Dauber Aff. ¶ 48.) Plaintiff rescheduled the evaluation for March 25.

Accompanied by her lawyer, plaintiff reported to the Medical Bureau on March 25, where she was examined by a psychologist and a physician and was determined to be fit to teach. (Dauber Aff. ¶ 53.)

### Discussion Regarding Procedural Due Process Claim

A claim for deprivation of procedural due process under 42 U.S.C. § 1983 requires that plaintiff show that she was deprived of a right, privilege or immunity secured by the Constitution or laws of the United States, and that the person who deprived her acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Dauber's position as a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 7

Not Reported in F.Supp.2d, 2001 WL 1246581 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

tenured teacher is a property interest protected by the Fourteenth Amendment. *Gargiul v. Tompkins,* 704 F.2d 661, 668 (2d Cir.1983), vacated on other grounds, 465 U.S. 1016 (1984). However, because plaintiff was neither deprived of her job as a teacher, nor deprived of any of her rights as a teacher, her property interest in her continued employment has not been infringed. Even a teacher who has been placed on inactive status, so long as she has not been suspended or removed, is not constitutionally guaranteed a hearing before such a decision is made, if she has already been found medically unfit. *Newman v. Board of Educ.,* 594 F.2d 299, 304 (2d Cir.1979). Plaintiff, who was neither found unfit to teach nor suspended, is entitled to no greater process.

**\*8** Even assuming that Young and Phillips violated plaintiff's contractual rights as negotiated in the collective bargaining agreement, employee grievance procedures are adequate to redress these deprivations. *Giglio v. Dunn,* 732 F.2d 1133 (2d Cir.1984).

Plaintiff also alleges that she was deprived of a liberty interest through the denial of a hearing to clear her name after she was accused of being mentally unfit. (Pl.'s Mem. of Law at 20.) However, damage to reputation by a government official, without more, does not implicate a liberty interest. *Paul v. Davis,* 424 U.S. 693 (1976). Due process is only implicated when there is a loss of reputation along with another tangible element. *Valmonte v. Bane,* 18 F.3d 922, 999 (2d Cir.1994). Such a " stigma plus" situation did not arise here, since plaintiff was not terminated from employment and has not experienced any adverse changes in her employment. *Donato v. Plainview-Old Bethpage Central School District,* 96 F.3d 623 (2d Cir.1996). Therefore, there is no loss of liberty.

As concerns the other defendants, plaintiff makes no claims of deprivation of due process involving Schwartz, and her claims against the Board of Education and Chancellor Crew must fail because plaintiff fails to allege a municipal policy of due process deprivations.

Plaintiff has failed to come forward with facts that

make out a case against any of the defendants for a due process deprivation. Consequently, her motion for partial summary judgment is denied and defendants' motion is granted.

*IV. Substantive Due Process*

Plaintiff alleges that defendants' retaliatory actions deprived her of her substantive due process rights. In order for government conduct to be actionable under § 1983 as a substantive due process violation, it must "shock the conscience." *Rochin v. California,* 342 U.S. 165, 172 (1952). Defendants' alleged actions, which as noted above, include pursuing a parent's claim of corporal punishment, maintaining a secret file on plaintiff, and requesting a psychiatric evaluation of plaintiff, fall short of this standard. Defendants' motion for summary judgment on plaintiff's substantive due process claim is granted.

*V. 42 U.S.C. § 1985 Claim*

Plaintiff's claim that defendants conspired to violate her First Amendment rights under 42 U.S.C. § 1985 must be dismissed. In order to state a claim for conspiracy to violate an individual's constitutional rights, a plaintiff must show: (1) a conspiracy (2) for the purpose of depriving a person of the equal protection of the laws, or equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Salgado v. City of New York,* No. 00 Civ. 3667, 2001 WL 290051 at * 8 (S.D.N.Y. Mar. 26, 2001). With respect to the second element, "[t]he Second Circuit has continued to require an allegation of discriminatory animus by conspirators under § 1985 even when the conspiracy involves a government actor." *Puglisi v. Underhill Park Taxpayer Assoc.,* 947 F.Supp. 673, 690 (S.D.N.Y.1996). Plaintiff fails to come forward with evidence that defendants were motivated by racial or class-based animus; therefore defendants' motion for summary judgment is granted as to plaintiff's § 1985 claim.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 8

Not Reported in F.Supp.2d, 2001 WL 1246581 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*VI. State Law Claims*

**\*9** Plaintiff raises state claims of intentional infliction of emotional distress and violation of the "whistleblower" statute.

Before commencing a tort action against the Board of Education, a plaintiff must serve a notice of claim in compliance with section 50-e of the General Municipal Law within 90 days of the date when the claim arises. New York Education Law § 3813(2) (McKinney 2001). Although plaintiff filed a notice of claim with the Comptroller's Office of the City of New York, the City and the Board of Education are separate entities. *Campbell v. City of New York*, 611 N.Y.S.2d 248 (2d Dep't 1994). Plaintiff's claim for intentional infliction of emotional distress must be dismissed due to plaintiff's failure to comply with this requirement. In addition, even if plaintiff had filed with the correct entity, none of the acts that plaintiff alleges occurred, with the exception of the destruction of plaintiff's classroom materials, which occurred after the filing, took place in the 90 days prior to her filing of her complaint.

Plaintiff's claim under the "whistleblower statute," N.Y. Civ. Serv. L. § 75-b, must be dismissed because the statute does not provide for an award of compensatory damages, which plaintiff seeks. Similarly, the relief available under N.Y. Labor L. § 740(2) is limited to equitable relief. Therefore plaintiff cannot state a claim for compensatory damages under these statutes.

CONCLUSION

Plaintiff's motion for partial summary judgment is denied in its entirety. Defendants' motion for summary judgment is granted in part and denied in part.

SO ORDERED.

S.D.N.Y.,2001.
Dauber v. Board of Educ. of City of New York
Not Reported in F.Supp.2d, 2001 WL 1246581 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- F.3d ----

Page 1

--- F.3d ----, 2007 WL 1452656 (C.A.2 (N.Y.))
**(Cite as: --- F.3d ----)**

**H**
New Phone Co., Inc. v. City of New York
C.A.2 (N.Y.),2007.
Only the Westlaw citation is currently available.
United States Court of Appeals,Second Circuit.
The NEW PHONE CO., INC., and Best Payphones,
Inc., Plaintiffs-Appellants,
v.
CITY OF NEW YORK, New York City
Department of Information Technology and
Telecommunications, and Gino Menchini, in his
Official Capacity, Defendants-Appellees.
**Docket Nos. 05-4935-cv(L), 05-5490-cv(CON),
05-5502-cv(CON).**

Argued: Nov. 14, 2006.
Decided: May 17, 2007.

**Background:** After filing six prior actions against
city for alleged discriminatory and retaliatory
actions, operator of so-called fringe payphone
services sued city, challenging new regulations of
fringe payphone businesses. The United States
District Court for the Eastern District of New York,
John Gleeson, J., 2005 WL 1902119, enjoined
operator from filing additional complaints without
leave of court, sua sponte dismissed complaint, and
denied operator's motion for leave to file yet
another complaint. Operator filed appeals, which
were consolidated.

**Holdings:** The Court of Appeals held that:

(1) district court should have undertaken a more
thorough review to determine if current and prior
actions were based on a common nucleus of
operative facts, before court sua sponte dismissed
current action;

(2) Court of Appeals lacked jurisdiction over appeal
from filing injunction; and

(3) vacatur of filing injunction rendered moot

appeal from order denying requests to file new
complaint.

Vacated and remanded in part; appeal dismissed in
part and denied as moot in part.

**[1] Action 13 ⏝69(1)**

13 Action
    13IV    Commencement,    Prosecution,    and
Termination
        13k67 Stay of Proceedings
            13k69 Another Action Pending
                13k69(1) k. In General. Most Cited
Cases

**Federal Courts 170B ⏝1145**

170B Federal Courts
    170BXIII    Concurrent    and    Conflicting
Jurisdiction and Comity as Between Federal Courts
        170Bk1145 k. Pendency and Scope of Prior
Proceedings; Prisoners Under Arrest. Most Cited
Cases
As part of its general power to administer its
docket, a district court may stay or dismiss a suit
that is duplicative of another federal court suit.

As part of its general power to administer its
docket, a district court may stay or dismiss a suit
that is duplicative of another federal court suit.

**[2] Federal Courts 170B ⏝818**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk818 k. Dismissal. Most Cited
Cases
The dismissal of a complaint based on the district
court's exercise of its general power to administer

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                Page 2

--- F.3d ----, 2007 WL 1452656 (C.A.2 (N.Y.))
**(Cite as: --- F.3d ----)**

its docket is reviewed for abuse of discretion.

**[3] Federal Civil Procedure 170A ☜1824**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
        170AXI(B)5 Proceedings
          170Ak1824 k. Dismissal on Court's
Own Motion. Most Cited Cases
While district court was not required to conduct an
exhaustive comparison before dismissing action
challenging new city regulations of so-called fringe
payphone businesses as being duplicative of another
federal court suit, court should have undertaken a
more thorough review to determine if prior actions
against city and challenge to new regulations were
based on a common nucleus of operative facts,
before court sua sponte dismissed action.

**[4] Federal Courts 170B ☜666**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(E) Proceedings for Transfer of
Case
        170Bk665 Notice, Writ of Error or
Citation
          170Bk666 k. Requisites and
Sufficiency; Defects. Most Cited Cases
Jurisdiction of the Court of Appeals is limited by
the wording of the notice of appeal.

**[5] Federal Courts 170B ☜666**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(E) Proceedings for Transfer of
Case
        170Bk665 Notice, Writ of Error or
Citation
          170Bk666 k. Requisites and
Sufficiency; Defects. Most Cited Cases
The Court of Appeals has an independent obligation
to ensure the notice of appeal complies with
appellate procedure rule governing such notices.
F.R.A.P.Rule 3(c), 28 U.S.C.A.

**[6] Federal Courts 170B ☜666**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(E) Proceedings for Transfer of
Case
        170Bk665 Notice, Writ of Error or
Citation
          170Bk666 k. Requisites and
Sufficiency; Defects. Most Cited Cases
While it may construe the rules of appellate
procedure liberally, the Court of Appeals does not
have the authority to waive the jurisdictional
requirements of the rule governing notices of
appeal. F.R.A.P.Rule 3(c), 28 U.S.C.A.

**[7] Federal Courts 170B ☜666**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(E) Proceedings for Transfer of
Case
        170Bk665 Notice, Writ of Error or
Citation
          170Bk666 k. Requisites and
Sufficiency; Defects. Most Cited Cases
An appellee may not waive the jurisdictional
defects in the notice of appeal. F.R.A.P.Rules 3, 4,
28 U.S.C.A.

**[8] Federal Courts 170B ☜666**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(E) Proceedings for Transfer of
Case
        170Bk665 Notice, Writ of Error or
Citation
          170Bk666 k. Requisites and
Sufficiency; Defects. Most Cited Cases
The jurisdiction of the Court of Appeals depends on
whether the intent to appeal from a decision is clear
on the face of, or can be inferred from, the notices
of appeal. F.R.A.P.Rule 3, 28 U.S.C.A.

**[9] Federal Courts 170B ☜666**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(E) Proceedings for Transfer of
Case

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----

--- F.3d ----, 2007 WL 1452656 (C.A.2 (N.Y.))
**(Cite as: --- F.3d ----)**

170Bk665 Notice, Writ of Error or Citation

170Bk666 k. Requisites and Sufficiency; Defects. Most Cited Cases

Court of Appeals lacked jurisdiction over appeal from order enjoining operator of so-called fringe payphone services from filing additional complaints without leave of court, where none of operator's notices of appeal mentioned filing injunction and intent to appeal from injunction could not be inferred from the notices. F.R.A.P.Rule 3, 28 U.S.C.A.

**[10] Federal Courts 170B ⇐⇒724**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(I) Dismissal, Withdrawal or Abandonment
         170Bk723 Want of Actual Controversy
            170Bk724 k. Particular Cases. Most Cited Cases

Vacatur of order enjoining operator of so-called fringe payphone services from filing additional complaints without leave of court rendered moot operator's appeal from order denying its requests to file a new complaint against city.

Charles H. Ryans, New York, NY, for Appellants.
Karen M. Griffin, Corporation Counsel of the City of New York (Michael A. Cardozo, Francis F. Caputo, Michael S. Adler, and Jerald Horowitz, of counsel), for Appellees.

Before: JACOBS, Chief Judge, SACK, Circuit Judge, and OBERDORFER, District Judge.[FN*]
PER CURIAM.

**\*1** This opinion addresses three consolidated appeals. In 05-4935-cv(L), the plaintiffs-appellants The New Phone Co., Inc. and Best Payphones, Inc. (collectively, "New/Best") jointly appeal from an August 5, 2005 order, 2005 WL 1902119 (Gleeson, J.) ("August 5 Order") *sua sponte* dismissing complaint number 05-cv-1702. In 05-5490-cv(C) and 05-5502-cv(C), New Phone and Best Payphone each appeal from an August 26, 2005 order (Gleeson, J.) ("August 26 Order") denying their requests to file new complaints under the terms of a

filing injunction issued by the district court in the August 5 Order.

*I. Background*

Established telephone companies such as Verizon provide the vast bulk of payphone services in New York City. New/Best have for several years operated what may fairly be described as fringe payphone services. For example, they place payphones on the outside of buildings and connect them to the lines maintained by the established telephone service companies. In 1996, New York City created a new regulatory scheme governing these fringe payphone businesses which, among other things, required them to obtain a franchise agreement from the City. New/Best objected to the new scheme and reacted by filing suit against the City. Since that time, the City has denied their repeated requests for franchise agreements and has taken various allegedly discriminatory and retaliatory actions against them. Over the years, New/Best generally responded to new City regulations by moving to amend their pending complaints. Concerned they would run afoul of a local four-month statute of limitations, they also often simultaneously filed new complaints. By the end of 2004, New/Best had seven complaints against the City pending in the Eastern District of New York. In addition, New/Best and the City have filed a number of procedural motions as they vigorously litigated.

In December 2004, the City adopted new regulations further affecting New/Best's businesses: (1) a six percent fee increase for new pay phones, and (2) a bar on future advertising on payphone enclosures in Manhattan below 96th Street. In response, New/Best again adopted the motion to amend/new complaint strategy. In April 2005, they moved to amend their seven then-pending complaints, including one in which motions to dismiss were fully briefed. Simultaneously, they jointly filed complaint 05-cv-1702, generally reiterating the allegations of the earlier complaints as amended.

Concerned about the proliferation of cases and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 4

--- F.3d ----, 2007 WL 1452656 (C.A.2 (N.Y.))
**(Cite as: --- F.3d ----)**

matters, the trial court, after briefing and argument by counsel, enjoined New/Best from filing additional complaints without leave of court. In addition, the court, *sua sponte,* and without briefing or argument, dismissed complaint 05-cv-1702. Three weeks later, New/Best sought leave to file yet another complaint; the district court denied their request.

## II. Analysis

### A. The Dismissal of 05-cv-1702

[1][2] As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The dismissal of a complaint based on the exercise of this power is reviewed for abuse of discretion. *See Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000).

*2 [3] Without the benefit of briefing on the subject, the trial court found with minimal discussion that "the complaint *appears to be largely* duplicative of earlier complaints." August 5 Order at 8 (emphasis added). In a footnote, the district court recognized that it did "not conduct an exhaustive comparison of the seven complaints." August 5 Order at 7 n. 6. While the district court was not required to conduct an exhaustive comparison before dismissing 05-cv-1702, it should have undertaken a more thorough review to determine if these claims were based on a "common nucleus of operative facts." *See, e.g., Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 113 (2d Cir.2000). Complaint 05-cv-1702 challenges new City regulations that New/Best could not have challenged before. When new allegations are not obviously barred by claim preclusion, plaintiffs are entitled to process, even if a motion for leave to amend has been denied. *Curtis,* 226 F.3d at 136, 140. Furthermore, while the district court stated that it would take New/Best's requests to amend their complaints into consideration, this is not adequate to ensure that the statute of limitations will be tolled

and their claims will be preserved. Under these circumstances, we cannot affirm the district court's *sua sponte* dismissal.[FN1]

There are other mechanisms the district court can employ to achieve judicial efficiency and still preserve New/Best's rights. The district court need not conduct a line by line comparison of 05-cv-1702 to excise the duplicative claims; it can order the plaintiffs to do so or face sanction. It can also order further briefing on the issue of whether the new claims are indeed based on the same " nucleus of operative facts." *Waldman,* 207 F.3d at 113. The court also has the authority to defer analysis on the merits of these claims until the pending motions to dismiss are resolved. For example, it could simply stay the 05-cv-1702 action, or it could dismiss it without prejudice so long as it also ordered the statute of limitations tolled.

Accordingly, we Vacate the portion of the August 5 Order dismissing 05-cv-1702 and Remand to the district court for further proceedings consistent with this order.

### B. The Filing Injunction

[4][5][6] None of the notices of appeal mention the entry of the filing injunction; our jurisdiction is limited by the wording of the notice. *Kowsh v. Bd. of Elections,* 99 F.3d 78, 80 (2d Cir.1996). Rule 3(c) provides that "the notice of appeal must ... designate the judgment, order or part thereof being appealed." Fed. R.App. P. 3(c)(1)(B). We have an independent obligation to ensure the notice of appeal complies with Rule 3(c). *Dynegy Midstream Servs. v. Trammochem,* 451 F.3d 89, 92 (2d Cir.2006). While we may construe the rules liberally, we do not have the authority to waive the jurisdictional requirements of this rule. *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 317, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). [FN2]

*3 We recognize that some of our opinions have suggested in dicta that we have jurisdiction to review a district court's decision if the appellee fully responds to the appellant's arguments-and thereby

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----

Page 5

--- F.3d ----, 2007 WL 1452656 (C.A.2 (N.Y.))
**(Cite as: --- F.3d ----)**

suffers no prejudice-even where the intent to appeal from the decision is not clear on the face of, and cannot be inferred from the language of, the notice of appeal. *See, e.g., Ametex Fabrics, Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 106 (2d Cir.1998). But such a rule would be inconsistent with other decisions of this Court which, even though we did not there comment explicitly on the issue, dismissed appeals on grounds of insufficient notice notwithstanding the appellees' complete response to the appellants' arguments. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 256 (2d Cir.1995) (holding that we do not have jurisdiction to review a district court's decision because the intent to appeal could not be inferred from the notice); Brief for Appellees at 23-27, *Shrader,* No. 95-7037 (2d Cir. Mar. 30, 1995) (responding to the appellant's arguments); *see also Kowsh,* 99 F.3d at 80; Brief for Appellees at 11-12, *Kowsh,* No. 96-9314 (2d Cir. Oct. 25, 1996) (responding to the appellant's arguments).

[7][8][9] Moreover, our assertion of jurisdiction over an appeal based on the appellee's response on the merits to the appellant's arguments suggests that an appellee may waive the jurisdictional defects in the notice of appeal. That is not so. *See Torres,* 487 U.S. at 317, 108 S.Ct. 2405 (noting that the requirements of Rules 3 and 4 may not be waived because they are jurisdictional in nature). In the case at bar, the City's brief responds to New/Best's arguments as to the August 5 filing injunction. Our jurisdiction, however, depends on whether the intent to appeal from that decision is clear on the face of, or can be inferred from, the notices of appeal. Because none of the notices of appeal mention the August 5 filing injunction and the intent to appeal from it cannot be inferred from the notices, we must dismiss the appeal for lack of jurisdiction insofar as the appellants seek review of that filing injunction.

### C. The August 26 Order

[10] The August 26 Order merely denies New/Best's requests to file a new complaint. New/Best's description of their proposed complaint raises the same claims asserted as "new" in 05-cv-1702. Vacatur of the August 5 Order ensures

that those claims will be adequately reviewed or preserved. Accordingly, the appeals of the August 26 Order are Denied as moot.

> FN* The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

> FN1. It appears that the district court intended the dismissal to be without prejudice; it suggested that plaintiffs may seek leave to file a new complaint after the pending motions are decided. August 5 Order at 8. Nevertheless, the dismissal without process or otherwise preserving the claims was error.

> FN2. In *Eberhart v. United States,* 546 U.S. 12, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam) and *Kontrick v. Ryan,* 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), the Supreme Court has cast some doubt about the rationale underlying *Torres.* Because the Supreme Court has not expressly overruled *Torres,* however, we are bound by it. *See Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997).

C.A.2 (N.Y.),2007.
New Phone Co., Inc. v. City of New York
--- F.3d ----, 2007 WL 1452656 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Oparaji v. New York City Dept. of Educ.
E.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Maurice OPARAJI, Plaintiff,
v.
NEW YORK CITY DEPARTMENT OF
EDUCATION; Wildcat Service Corporation; John
V. Lindsay Wildcat Academy Charter School;
Wildcat Second Opportunity School; Lawrence B.
Becker; Caryl Cohen; Robert Zweig; and Robert
Hickson, Defendants.
**No. 03 CV 4105NGVVP.**

June 14, 2005.

Maurice Oparaji, Rosedale, NY, pro se.
Cindy E. Switzer, City of New York Law
Department, Mary P. Watson, Cleary Gottlieb Steen
& Hamilton, New York, NY, for Defendants.

*OPINION AND ORDER*
GERSHON, J.
*1 Acting *pro se,* plaintiff has filed four related
actions arising from the same core set of facts, all of
which are currently pending before this court. The
instant action ("Oparaji III") was filed in the
Southern District of New York on June 23, 2003
and transferred to this court on August 13, 2003.
*Oparaji v. New York City Department of Education,*
docket number 00 CV 5953 ("Oparaji I"), was filed
in this court on October 3, 2000. *Oparaji v. New
York City Board of Education,* docket number 02
CV 3900 ("Oparaji II"), was filed in this court on
July 8, 2002. *Oparaji v. United Federation of
Teachers,* docket number 03 CV 3927 ("Oparaji IV"
), was filed in the Southern District of New York on
July 8, 2002 and transferred to this court on July 22,
2003. Oparaji I and Oparaji II were consolidated for
all pre-trial purposes on September 16, 2002.

In the instant action, four motions are currently

pending before the court: (1) a motion to dismiss
the original complaint made by defendants Wildcat
Service Corporation, John V. Lindsay Wildcat
Academy Charter School ("Wildcat Academy"),
and Wildcat Second Opportunity High School
(collectively, the "Wildcat Defendants"); (2) a
motion to dismiss the First Amended Complaint
made by the Wildcat Defendants; (3) a motion to
dismiss the First Amended Complaint made by
defendants New York City Department of
Education (the "Dept. of Education," formerly the
New York City Board of Education), Lawrence B.
Becker, Caryl Cohen, Robert Zweig, and Robert
Hickson (collectively, the "NYC Defendants"); and
(4) a motion by plaintiff for leave to file a
supplemental pleading. The Wildcat Defendants'
motion to dismiss the original complaint is
dismissed as moot. For the reasons set forth below,
the Wildcat Defendants' remaining motion to
dismiss is granted in its entirety, the NYC
Defendants' motion to dismiss is granted in its
entirety, and plaintiff's motion for leave to file a
supplemental pleading is denied. The motions
currently pending before the court in Oparaji IV
will be addressed in a separate opinion.

PROCEDURAL HISTORY

All four of the Oparaji actions concern allegations
of employment discrimination. To set the instant
action in proper context, the court will briefly
outline the procedural history of Oparaji I and
Oparaji II. Oparaji I was commenced by complaint
filed on October 3, 2000. Defendants served and
filed an answer on December 28, 2000. At a
conference before the Honorable Viktor V.
Pohorelsky, United States Magistrate Judge, held on
October 21, 2002, plaintiff requested leave to
amend the complaint to add one additional claim,
and Judge Pohorelsky set a briefing schedule.
Plaintiff served the proposed amended complaint by
the deadline, and defendants' counsel subsequently
advised the court that defendants would not oppose

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

it. Accordingly, Judge Pohorelsky entered an order, dated December 26, 2002, granting plaintiff leave to file the proposed amended complaint and directing defendants to serve and file an answer within thirty days of receiving notice of filing. The amended complaint that plaintiff filed, however, was substantially different from the proposed one that he had previously served on defendants. It was five pages longer and contained seven additional claims. Following a hearing, Judge Pohorelsky determined that plaintiff had attempted to deceive the court. As a result, he denied plaintiff's application to file the second proposed amended complaint and declared that no further motions to add new claims to the complaint would be considered by the court. Nevertheless, Judge Pohorelsky afforded plaintiff the opportunity to file the version of the proposed amended complaint that he had served on defendants, but plaintiff declined to do so, choosing instead to proceed on the original complaint. Judge Pohorelsky's decision was affirmed by this court by order dated February 4, 2003. Plaintiff's subsequent motions for reconsideration were denied.

**\*2** Oparaji II was commenced by complaint filed on July 8, 2002. An amended complaint was filed shortly thereafter on July 15, 2002 and a second amended complaint was filed on October 25, 2002. Defendants served and filed an answer to the second amended complaint on December 13, 2002. On January 16, 2003, plaintiff sought leave to amend the complaint further. The proposed third amended complaint contained many of the claims that formed the basis of plaintiff's deception in Oparaji I. In a report and recommendation dated September 10, 2003, Judge Pohorelsky recommended denying leave to amend with respect to one proposed new claim on the ground that it was duplicative of a claim already contained in the second amended complaint. Judge Pohorelsky recommended denying leave to amend with respect to the other proposed new claims on the ground of futility. This court adopted Judge Pohorelsky's report and recommendation by order dated August 30, 2004. Plaintiff's subsequent motions for reconsideration were denied.

Oparaji III was commenced in the Southern District

of New York by complaint filed on June 23, 2003 and transferred to this court on August 13, 2003. The Wildcat Defendants filed a motion to dismiss the original complaint on September 17, 2003. Before the motion was fully briefed, plaintiff filed an amended complaint (the "First Amended Complaint") on December 8, 2003. The court accepted the First Amended Complaint and set a new briefing schedule. Both the Wildcat Defendants and the NYC Defendants filed motions to dismiss the First Amended Complaint on February 27, 2004. While that motion was pending, plaintiff, on September 20, 2004, filed a motion for leave to file a supplemental pleading.

## FACTS

All factual allegations in the First Amended Complaint are accepted as true for the purposes of the pending motions and all reasonable inferences are drawn in favor of plaintiff.

Plaintiff is a native of Nigeria and a naturalized citizen of the United States. He holds permanent certification from New York State as a Special Education teacher and a Business & Distributive Education teacher.

### I. Plaintiff's Employment as a New York City Public School Teacher

During the summer of 1999, plaintiff attended a job fair at which he was recruited to work for the New York City public school system. Plaintiff was initially assigned to Intermediate School 82X, but was reassigned to Carter G. Woodson Elementary School prior to the start of the school year. Plaintiff commenced working at Carter G. Woodson Elementary School on September 7, 1999. He was terminated on October 5, 1999 and replaced with an uncertified teacher of the same ethnic origin as the school's principal. (Plaintiff does not specify what that ethnic origin is.) Plaintiff filed a charge with the Equal Employment Opportunity Commission (" EEOC") on May 8, 2000 alleging that his termination from Carter G. Woodson Elementary School was the result of discrimination on the basis

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 3

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

of national origin. The EEOC issued plaintiff a right to sue letter on September 18, 2000.

**\*3** In June 2000, plaintiff was assigned to Springfield Gardens High School as a teacher of Accounting & Business Practice. On October 10, 2000, defendant Hickson, the principal of the school, told plaintiff that he had been informed of plaintiff's pending EEOC charge, and instructed plaintiff that he would have to choose between the suit and the job. "You cannot have it both ways," the principal said. Plaintiff was injured on October 19, 2000 and was on sick leave from that date until January 2, 2001. During that period, plaintiff received from school officials a "series of letters, corrective memos, warnings, and request[s] for medical examinations." First Amended Complaint ¶ 43. On January 11, 2001, shortly after plaintiff's return to work, plaintiff's lessons were observed by a school district official. The next day, plaintiff met with the principal and his union representative. At the meeting, he was informed that the district had granted him "a two-week grace period in which plaintiff would decide on whether to drop his EEOC charge and lawsuit against the Board." First Amended Complaint ¶ 48. Plaintiff was then presented with three letters: The first was a report of the prior day's observation. The second was a notice of discontinuance of plaintiff's service at Springfield Gardens High School. The third was a notice of reassignment to District 77. On April 18, 2002, plaintiff filed a second charge with the EEOC alleging that his termination from Springfield Gardens High School was the result of retaliation for filing the first EEOC charge. The EEOC issued plaintiff a right to sue letter on May 29, 2002.

Plaintiff worked at Martin Van Buren High School from January 23, 2001 to February 15, 2001. During that period, he served first as a visitor's attendant in the principal's office and then as a library attendant. On February 5, 2001, defendant sent a letter to John W. Lee, Superintendent of Queens High Schools, complaining of harassment and intimidation, and stating that he had been denied leave under the Family and Medical Leave Act ("FMLA"). Plaintiff was terminated on February 15, 2001.

Plaintiff received a letter dated June 13, 2002 from defendant Becker, Director of Human Resources, denying his application for the issuance of teaching licenses in the following subject areas: Accounting & Business, Computer Literacy, Account DHS, and Typing JHS. (Plaintiff does not allege when the application was made.) The letter, annexed to the First Amended Complaint as exhibit 35 and incorporated therein by reference, stated that plaintiff's application was denied "due to the unsatisfactory rating for excessive absences, ineffective teaching, lack of respect for colleague[s] and supervisors and discontinuance of probationary services." The letter noted that plaintiff had been given the opportunity to review those findings with the Dept. of Education's Office of Personnel Investigation, and that he had the right to appeal the decision. In accordance with the procedures set forth in the letter, plaintiff appealed the denial of his license to the Division of Human Resources on June 19, 2002. The appeal was denied by letter dated January 3, 2003 from defendant Cohen, Deputy Executive Director of Human Resources.

*II. Plaintiff's Application for a Position as a Wildcat Teacher*

**\*4** Plaintiff applied for a position as a computer application instructor at the Wildcat Academy. Following an interview on August 26, 2002, he was given a conditional offer of employment, subject to a reference check. Officials from the Wildcat Academy subsequently contacted Hickson, principal of Springfield Gardens High School, for a reference. The offer of employment extended to plaintiff was withdrawn on August 30, 2002. On October 11, 2002, plaintiff filed a third charge with the EEOC, alleging that the NYC Defendants denied his application for certain licenses to teach and provided a negative reference to the Wildcat Defendants in retaliation for his filing the prior two EEOC charges. The third EEOC charge was addressed only to the Dept. of Education; it did not name the Wildcat Defendants as respondents. In connection with this charge, the EEOC issued a right to sue letter to plaintiff on May 28, 2003.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

### III. Claims Raised in the First Amended Complaint

Plaintiff's First Amended Complaint sets forth six " counts." The first count alleges that all defendants engaged in discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, ("Title VII") by:

(a) failing or refusing to issue plaintiff with license to teach Accounting and Business based on plaintiff's permanent certification in Business and Distributive Education.

(b) failing or refusing to issue him with license to teach Special Education based on plaintiff's permanent certification in Special Education.

(c) failing or refusing to hire plaintiff;

(d) causing prospective employers from hiring plaintiff by providing negative reference;

(e) failing or refusing to take appropriate action to remedy the effects of the discriminatory and retaliatory treatment of plaintiff;

(f) subjecting plaintiff to disparate discipline, including denying plaintiff's application for licenses;

(g) failing to take appropriate action to eliminate the discriminatory and retaliatory policies and practices and to correct the present effects of those policies and practices; and

(h) refusing promptly and effectively to investigate and to take prompt and effective steps to remedy and prevent the conduct described above.

First Amended Complaint ¶ 62.

The second count alleges that the Dept. of Education, Becker, and Cohen violated the civil rights acts codified at 42 U.S.C. §§ 1981, 1983, and 1985 ("Section 1981," "Section 1983," and " Section 1985," respectively) by:

(a) denying plaintiff license to teach;

(b) retaliation of plaintiff's protected activities to his national origin discrimination;

(c) denying plaintiff right to earn a living;

(d) refusing to issue teaching license in Computer literacy;

(f) refusing to issue teaching license in Accounting DHS;

(g) refusing to issue teaching license in Typing JHS;

(h) causing John V. Lindsay Wildcat Academy Charter School to discriminate against plaintiff;

*5 (i) not according plaintiff procedural due process prior to denying his application for reasons stated in the letter dated June 13, 2002;

(j) not according plaintiff procedural due process prior to denying his application for reasons stated in the letter dated January 3, 2003.

(k) using threats, intimidation, and harassment on plaintiff;

(l) interfering with plaintiff's livelihoods;

(m) denying plaintiff job;

(n) denying plaintiff employment enjoyment; and

(o) the defendant acted because of the plaintiff's national origin and because plaintiff filed EEOC charge against New York City Department of Education.

First Amended Complaint ¶ 64.

The third count alleges that all defendants engaged in a civil conspiracy to prevent plaintiff from working at the Wildcat School. The fourth count alleges that the NYC Defendants violated the Americans with Disabilities Act, Pub.L. 101-336, 104 Stat. 327 (1990), ("ADA") by asking plaintiff to submit to a medical examination "inconsistent with business necessity." First Amended Complaint ¶ 69. The fifth count alleges that the NYC Defendants violated the Family and Medical Leave Act, Pub.L. 103-3, 107 Stat. 6 (1993), ("FMLA") by denying his application for leave, "inconsistent with business necessity." First Amended Complaint ¶ 72.

The sixth and final count alleges that all defendants committed violations of various provisions of New York statutory and common law, as follows:

(a) libel and slander of the plaintiff;

(b) false statement against the plaintiff;

(c) abuse of process against the plaintiff;

(d) intentional infliction of emotional distress upon the plaintiff; and

(e) Violation of rights otherwise guaranteed to the plaintiff under the laws and constitution of the State of New York.

First Amended Complaint ¶ 74.

### V. Proposed Supplemental Pleading

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

In his motion for leave to file a supplemental pleading, plaintiff alleges that, in July 2003, he applied to the Excelsior Teacher Initiative, run by the Dept. of Education, for a position as a special education teacher, and that his application was denied on August 5, 2003. Plaintiff further alleges that the denial occurred in retaliation for the charges that he filed with the EEOC. Plaintiff requests the court's permission to supplement the First Amended Complaint with a Title VII claim based on these factual allegations, and to add as defendants in this action three individuals with whom he corresponded in connection with his application.

DISCUSSION

*I. Standard of Review*

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper only when it is clear that no relief could be granted under any set of facts that could be proved consistent with plaintiff's allegations. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The task of the court in ruling on a Rule 12(b)(6) motion merely is to assess the legal feasibility of the complaint, not to assay the weight of the evidence that might be offered in support of it. *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). The court is required to accept as true all factual allegations in the complaint, and to draw all reasonable inferences in favor of the plaintiff. *Id.* Moreover, *pro se* complaints, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers and are to be construed liberally on a motion to dismiss. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Boddie v. Schneider,* 105 F.3d 857, 860 (2d Cir.1997).

*II. Claims against the NYC Defendants*

*A. Title VII Claims*

1. Substantive Provisions of Title VII

*6 Title VII provides that it shall be "an unlawful employment practice" for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate that (1) plaintiff belongs to a protected class, (2) plaintiff was qualified to perform the duties of the job at issue, (3) plaintiff suffered an adverse employment action, and (4) the circumstances surrounding that action permit an inference of discrimination. *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir.2004).

Title VII also provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) plaintiff was engaged in an activity protected under Title VII, (2) the employer was aware of plaintiff's participation in the protected activity, (3) the employer took adverse action against plaintiff, and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *Mack v. Otis Elevator Co.,* 326 F.3d 116, 129 (2d Cir.2003).

2. Procedural Requirements of Title VII

As a pre-requisite to filing a civil action, Title VII requires an aggrieved individual to file a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1). In jurisdictions, such as this one, in which there exists an agency charged with enforcing state or local prohibitions against employment discrimination, the statute provides a 300 day limitations period for filing such charge. 42 U.S.C. § 2000e-5(e)(1). Allegations of discrete acts of discrimination that occurred prior to the 300 day period are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

time-barred, even if related to acts that occurred within the 300 day period. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). If the EEOC declines to pursue legal action with respect to the charge, it will issue a "right to sue" letter to the party who filed the charge. The party then has 90 days from receipt of the letter to commence a lawsuit. 42 U.S.C. § 2000e-5(b).

### 3. Liability of Individual Defendants

As an initial matter, the court notes that individual defendants are not subject to personal liability under Title VII. This is true even with respect to individual defendants who had supervisory control over the plaintiff. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995) ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *see also Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir.2004) ("[T]he district court properly dismissed [plaintiff's] Title VII claims against the individual defendants."); *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000) (per curiam) ("[I]ndividuals are not subject to liability under Title VII."). Accordingly, all Title VII claims asserted against Becker, Cohen, Zweig, and Hickson are dismissed.

### 4. Claims Asserted against the Dept. of Education

*7 With respect to the Title VII claims asserted against the Dept. of Education, plaintiff alleges five discrete adverse employment actions: (1) his termination from Carter G. Woodson Elementary School; (2) his termination from Springfield Gardens High School; (3) his termination from Martin Van Buren High School; (4) the denial of his application for certain teaching licenses; and (5) the provision of a negative reference to officials at the Wildcat Academy. The first of these is duplicative of a claim asserted in Oparaji I, and, in any event, is time-barred. Plaintiff alleges that his

termination from Carter G. Woodson Elementary School was the result of discrimination on the basis of his national origin. The termination occurred on October 5, 1999. Plaintiff filed a timely charge with the EEOC on May 8, 2000, and the EEOC issued a right to sue letter to plaintiff on September 18, 2000. But this suit was not commenced until June 23, 2003, far more than 90 days after plaintiff's receipt of the letter. As a result, the claim concerning plaintiff's termination from Carter G. Woodson Elementary School is barred by the 90 day statute of limitations for filing suit following the issuance of a right to sue letter.

The remaining adverse employment actions alleged by plaintiff in this suit are duplicative of claims asserted in Oparaji II. As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000) (citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). This is because a plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 139. Since the Title VII claims arising from plaintiff's termination from Springfield Gardens High School, plaintiff's termination from Martin Van Buren High School, the denial of plaintiff's application for certain teaching licenses, and the provision of a negative job reference to plaintiff's prospective employer all appear in the second amended complaint in Oparaji II, to which the NYC Defendants interposed an answer prior to the commencement of this suit, the court exercises its general administrative power to dismiss these claims as duplicative.

### B. Violations of the Civil Rights Acts

#### 1. Section 1983 Claims

To state a claim under Section 1983, a plaintiff must allege that the defendants, acting under color of state law, deprived him of a federally protected right, such as a constitutional right. *Rendell-Baker*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). To prevail against a municipal defendant, such as the Dept. of Education, a Section 1983 claimant must demonstrate that the deprivation was caused by a custom or policy of the municipality; the claim may not be based simply on a theory of *respondeat superior. Monell v. Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). An action may not be brought under Section 1983 to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII. *Patterson,* 375 F.3d at 225 (citing *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 143 (2d Cir.1993)); *see generally City of Rancho Palos Verdes v. Abrams,* ---U.S. ---- (2005) ("The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983."). A Title VII plaintiff is not precluded from bringing a concurrent action under Section 1983, however, if the claim asserted is based on a distinct violation of a constitutional right. *Id.*

**\*8** Plaintiff's allegations that he suffered retaliation for filing charges with the EEOC do not implicate any constitutional rights; they are merely restatements of his Title VII retaliation claims. Accordingly, plaintiff's allegations of retaliation fail to state a claim under Section 1983. On the other hand, plaintiff's allegations that he was denied procedural due process, and that he suffered intentional discrimination on the basis of his national origin, do implicate his rights under the Constitution. The court will consider both of these sets of allegations individually.

### a. Denial of Procedural Due Process

The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 569-70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Analysis of a procedural due process claim consists of two questions: The first

asks whether there exists a liberty or property interest that has been interfered with by the State. The second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *Shakur v. Selsky,* 391 F.3d 106 (2d Cir.2004) (citing *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

Here, plaintiff claims that his application for certain teaching licenses was denied without due process of law. But his claim fails the first prong of the procedural due process analysis because he does not have a constitutionally protected interest in the licenses. Whether an applicant has such an interest depends on whether the applicant has a "legitimate claim of entitlement" to the issuance of the licenses in question, or merely a "unilateral expectation of it. " *Roth,* 408 U.S. at 577; *accord Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985). Under New York law, the issuance of a license to teach in the New York City public schools is considered a privilege, rather than an entitlement, within the discretion of the Dept. of Education. *See Arrocha v. Board of Education,* 93 N.Y.2d 361, 363, 690 N.Y.S.2d 503, 712 N.E.2d 669 (1999) (" The Board's decision denying petitioner the privilege of a teaching license is the type of administrative action that, at common law, was subject to challenge through a writ of mandamus to review and thus cannot be disturbed unless it is arbitrary and capricious."). Thus, plaintiff's interest in the teaching licenses constitutes no more than a mere unilateral expectation. As a result, that interest is not protected by the Fourteenth Amendment, and plaintiff fails to state a claim for due process violations under Section 1983.

Nevertheless, the court notes that plaintiff was afforded procedural protections during the licensing process. The denial of his application for licenses was based on his unsatisfactory rating as a probationary teacher. During the pendency of his application, he was given the opportunity to review that rating with the Dept. of Education's Office of Personnel Investigation. In addition, he was given the opportunity to appeal the denial of his application.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 8

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

### b. Intentional Discrimination on the Basis of National Origin

**\*9** Intentional discrimination, by a State employer, on the basis of national origin constitutes a denial of equal protection in violation of the Fourteenth Amendment. Plaintiff's only allegation of such discrimination is in connection with his termination from Carter G. Woodson Elementary School. (He attributes his other terminations and the denial of his application for teaching licenses to retaliation for his filing of charges with the EEOC, which theory cannot sustain an equal protection claim.) Plaintiff's termination from Carter G. Woodson Elementary School occurred on October 5, 1999. The statute of limitations applicable to claims brought under Section 1983 in New York is three years. *Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Patterson,* 375 F.3d at 225. Thus, the statute of limitations expired on October 5, 2002, but this suit was not filed until June 23, 2003. Accordingly, plaintiff's Section 1983 claims arising from his termination from Carter G. Woodson Elementary School are time-barred.

### 2. Section 1981 Claims

Section 1981 outlaws discrimination on the basis of race or alienage with respect to the enjoyment of benefits, privileges, terms, and conditions of any contractual relationship, including employment, and is applicable to a plaintiff complaining of discrimination even during a probationary period of employment. *Patterson,* 375 F.3d at 224-25. For discrimination to be actionable under Section 1981, it must be intentional. *Id.* at 226. Retaliation is also actionable under Section 1981, provided that the retaliation occurred in response to the assertion of rights that are protected by Section 1981. *Hawkins v. 1115 Legal Service Care,* 163 F.3d 684, 693 (2d Cir.1998). Although Section 1981's prohibition against racial discrimination encompasses discrimination based on ancestry or ethnic characteristics, it does not encompass discrimination based on national origin. *St. Francis College v. Al-Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir.1998). As with

claims brought under Section 1983, the statute of limitations for claims brought under Section 1981 is three years.

Any Section 1981 claim arising from plaintiff's termination from Carter G. Woodson Elementary School is time-barred. But even if timely, such a claim would not be actionable under Section 1981 because the alleged basis for the termination is discrimination based on national origin. Although the line between discrimination based on ancestry or ethnic characteristics and discrimination based on place or nation of origin "is not a bright one," *St. Francis College,* 481 U.S. at 614 (Brennan, J., concurring), plaintiff here complains specifically of discrimination on the basis of his national origin. Plaintiff describes himself as "a native of Nigeria" and a "naturalized United States citizen." First Amended Complaint ¶ 7. In his May 8, 2000 EEOC charge, and throughout the First Amended Complaint, plaintiff alleges that his termination from Carter G. Woodson Elementary School was the result of discrimination based on his national origin. In all of the voluminous submissions plaintiff has made to the court, he has never complained of discrimination based on race, nor of discrimination based on his ethnic characteristics, but has consistently alleged discrimination by the NYC Defendants on the basis of his *national origin.* Accordingly, plaintiff fails to state a claim under Section 1981 for his termination from Carter G. Woodson Elementary School. Since, according to plaintiff, all of the acts of retaliation identified in the First Amended Complaint came in response to the EEOC charge alleging national origin discrimination, those acts likewise fail to give rise to a claim under Section 1981.

### 3. Section 1985 Claims

**\*10** Section 1985(3) makes it unlawful for persons to conspire to deny someone equal protection of the law or equal privileges and immunities under the law. To state a claim under Section 1985(3), a plaintiff must allege: (1) a conspiracy motivated by invidious discriminatory animus (2) for the purpose of depriving a person or class of persons of the equal protection of the laws or the equal privileges

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 9

and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999). The statute of limitations applicable to claims brought under Section 1985(3) is three years. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Thus, any Section 1985(3) claim arising from plaintiff's termination from Carter G. Woodson Elementary School is time-barred. Plaintiff's other alleged injuries, which plaintiff asserts are the result of retaliation, are not actionable under Section 1985(3).

### C. ADA Claim

The ADA limits the right of employers to require employees and prospective employees to submit to medical examinations. 42 U.S.C. § 12112(d). Plaintiff alleges that, on November 8, 2000, the Dept. of Education requested that he submit to a medical examination in violation of the ADA. The ADA incorporates by reference the procedural requirements of Title VII, including the exhaustion of administrative remedies requirement and related limitations periods. 42 U.S.C. § 12117(a). Plaintiff did not include his claim under the ADA in any of the charges that he filed with the EEOC. As a result, it is unexhausted.

An unexhausted claim may be heard by a district court if it is "reasonably related" to allegations contained in a charge that plaintiff filed with the EEOC.[FN1] *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003); *Butts v. City of New York Dept. of Housing Preservation and Development,* 990 F.2d 1397, 1401 (2d Cir.1993), *abrogated by statute on other grounds as stated in Hawkins,* 163 F.3d at 693 . A claim is considered to be "reasonably related" if it falls into any one of three categories. The first category is comprised of claims that would fall within the scope of the EEOC investigation that could reasonably be expected to grow out of the charge that was filed. *Deravin,* 335 F.3d at 200-01; *Butts,* 990 F.2d at 1402. Here, it is not reasonable to expect that either the charge filed by plaintiff on April 18, 2002, alleging that plaintiff was

terminated from Springfield Gardens High School in retaliation for a prior EEOC charge, or the charge filed by plaintiff on October 11,2002, alleging that the NYC Defendants denied plaintiff certain teaching licenses and provided a negative reference to the Wildcat Defendants in retaliation for a prior EEOC charge, would have prompted the EEOC to investigate whether the NYC Defendants violated the ADA. Accordingly, plaintiff's ADA claim does not fall into the first category.

> FN1. Such unexhausted claims are subject to the statute of limitations analysis set forth in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

*11 The second type of "reasonably related" claim is one alleging retaliation by an employer against an employee for filing an EEOC charge. *Deravin,* 335 F.3d at 201 n. 3; *Butts,* 990 F.2d at 1402. Plaintiff's ADA claim is based on allegations that he was asked to submit to unlawful medical examinations, not that he suffered retaliation for complaining of disability discrimination. Accordingly, plaintiff's ADA claim does not fall into the second category.

The third type of "reasonably related" claim is one that alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Deravin,* 335 F.3d at 201 n. 3; *Butts,* 990 F.2d at 1402-03. Since none of plaintiff's EEOC charges allege that he was asked to submit to unlawful medical examinations, plaintiff's claims do not fall into this category, either. As a result, plaintiff's unexhausted ADA claim may not be heard by this court.

### D. FMLA Claim

Section 105(a)(1) of the FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the statute. 29 U.S.C. § 2615(a)(1). Plaintiff alleges that the Dept. of Education denied his request for leave to which he was entitled under the FMLA. Although plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 10

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

does not indicate in the First Amended Complaint when the alleged denial occurred, he does state that he wrote a letter to the Superintendent of Queens High Schools on February 5, 2001 complaining about the denial. Thus, the court may infer that the denial occurred on or before February 5, 2001. Unless an FMLA violation is "willful," the applicable statute of limitations is two years. 29 U.S.C. § 2617(c)(1); *see Porter v. New York University School of Law,* 392 F.3d 530, 531-32 (2d Cir.2004) (per curiam). An employer acts willfully for purposes of the FMLA when the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by law. *Id.* As in *Porter,* here, "the facts alleged by [plaintiff] cannot conceivably amount to willful behavior." *Id.* at 532. Accordingly, plaintiff's FMLA claim is subject to a two year statute of limitations, which expired on or before February 5, 2003. Since this suit was not commenced until June 23, 2003, plaintiff's FMLA claim is time-barred.

### E. State Law Claims

State notice of claim provisions are matters of substantive state law that must be applied by federal courts to supplemental state claims. *See Felder v. Casey,* 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). Where state law specifies a particular notice of claim procedure, federal courts are not free to substitute another procedure. *See, e.g., Jones v. Stancik,* 2004 WL 2287779 (E.D.N.Y.2004). New York law provides that no legal action may be brought against the Dept. of Education or its employees acting within the scope of their employment unless a notice of claim has been served on the Dept. of Education within 90 days of the event giving rise to the claim. N.Y. Educ. Law § 3813. In fact, the law requires that the filing of such a notice of claim be affirmatively pleaded in the complaint. N.Y. Educ. Law § 3813(1)
.

**\*12** In his report and recommendation dated September 10, 2003, adopted by this court on August 30, 2004, Judge Pohorelsky specifically found that plaintiff failed to serve a timely notice of claim on the Dept. of Education with respect to

state law claims that he sought to assert in a proposed third amended complaint in Oparaji II. The last event that forms any part of the basis for plaintiff's state law claims is the withdrawal of the conditional offer of employment by the Wildcat Defendants, which occurred on August 30, 2002. Plaintiff alleges that he served a notice of claim on the Dept. of Education on March 7, 2003, far more than 90 days later. As a result of plaintiff's failure to comply with the state law notice of claim requirement, all state law claims against the NYC Defendants are dismissed.

### III. Claims against the Wildcat Defendants

#### A. Title VII Claims

It is not clear from the First Amended Complaint whether plaintiff's Title VII claims against the Wildcat Defendants are based on a theory of discrimination, a theory of retaliation, or both. For the purposes of this motion, the court will assume that it is both. Plaintiff's October 11, 2003 EEOC charge makes the following allegations:
On or about June 13, 2002 the Human Resources Division of New York City Board of Education denied me license to teach. (See Letter dated June 13, 2002 Signed by Lawrence E. Becker, the Deputy Exec. Director) New York City Board of Education has not only denied me license to teach, but also refused to hire me. In addition, New York City Board of Education has cause prospective employers from hiring me by giving me negative reference. For example, I applied for a teaching job with WILD CAT ACADEMY. On or about August 26, 2002 I was interviewed by Ashanti Chimurengaand (718-842-4208), and I received a conditional offer subject to a reference check to my former school principal, Dr. Robert Hickson. Thereof, WILD CAT ACADEMY did not call me back and did not hire me. I suspect my former school principal, Dr. Robert Hickson, at Springfield Garden High School of New York City Board of Education, gave me a negative reference in retaliation of my filing of EEOC charges. I believe that the Human Resources Division denied me license to teach, and the principal of Springfield

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 11

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Gerden High School gave me negative reference, because I filed charges against it and refused to drop the charges (Charge Numbers 160A01734 and 160A201167).

Neither the October 11, 2003 EEOC charge, nor the prior charges filed by plaintiff, named the Wildcat Defendants as respondents, nor alleged any wrongdoing on their part.

A Title VII claim against a party who was not named in an EEOC charge may be heard by a district court if there is an "identity of interests" between that party and a party actually named in the charge. *Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991); *Vital v. Interfaith Medical Center,* 168 F.3d 615, 619 (2d Cir.1999). To determine whether parties possess an identity of interests, a court must weigh four factors: (1) whether the role of the unnamed party could, through reasonable effort by the plaintiff, be ascertained at time of the filing of the EEOC charge; (2) whether the interests of the named party are so similar to the interests of the unnamed party that, for the purpose of obtaining voluntary conciliation and compliance, it would be necessary to include the unnamed party in the EEOC proceedings; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interests of that party; and (4) whether the unnamed party has in any way represented to the plaintiff that its relationship with the plaintiff must be mediated through the named party. *Id.* Here, none of the factors point toward an identity of interests between the Wildcat Defendants and the NYC Defendants. As a result, plaintiff's unexhausted claims against the Wildcat Defendants may not be heard by this court.

*B. State Law Claims*

1. Libel and Slander

**\*13** Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name. *Albert v. Loksen,* 239 F.3d 256, 265 (2d Cir.2001). Generally, spoken defamatory words constitute slander, and written defamatory words constitute libel. *Id.* The elements of a claim for slander under New York law are (1) a defamatory statement of fact that is: (2) false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the degree of fault required by the First Amendment, (6) that either causes special harm or constitutes slander *per se,* and (7) that is not protected by privilege. *Id .* at 265-66. A claim for libel requires all of the foregoing elements, plus the expression of the defamatory statement in writing or print. *See Cella v. Filipino Reporter Enterprises Inc.,* 209 F.3d 163, 176 (2d Cir.2000). In addition, New York law requires a plaintiff to plead libel and slander with particularity. "In an action for libel and slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." N.Y. C.P.L.R. Rule 3016; *see Bond v. Board of Education,* 1999 WL 151702 (E.D.N.Y.1999).

Here, the First Amended Complaint does not identify the particular words complained of. In fact, it fails to allege that the Wildcat Defendants published any statement of fact concerning plaintiff to a third party, much less a statement that was false and defamatory. With respect to the Wildcat Defendants, the First Amended Complaint alleges only that they sought a reference for plaintiff from Hickson. Even if the reference given was defamatory, the Wildcat Defendants cannot be held liable merely for receiving it. Accordingly, the First Amended Complaint fails to state a claim of libel or slander against the Wildcat Defendants.

2. False Statement

New York does not recognize a tort of "false statement." If plaintiff intended, by this phrase, to assert a claim of defamation, it must be dismissed for the reasons set forth above. Alternatively, if plaintiff intended to assert a claim of fraud, it must be dismissed because plaintiff failed to state any facts from which a fraud could be inferred.

3. Abuse of Process

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 12

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

An abuse of process claim will lie under New York law where a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Shain v. Ellison,* 273 F.3d 56, 68 (2d Cir.2001); *Board of Education of Farmingdale Union Free School District v. Farmingdale Classroom Teachers Assoc., Inc.,* 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). Since the Wildcat Defendants have not caused any process to issue against plaintiff, plaintiff cannot state a claim against them for abuse of process.

### 4. Intentional Infliction of Emotional Distress

**\*14** Under New York law, a claim for intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996). To satisfy the first element, the conduct at issue must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d; *accord id.* at 790; *Howell v. New York Post Co.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). None of plaintiff's allegations concerning the Wildcat Defendants rise to the level of extreme and outrageous conduct. Accordingly, the First Amended Complaint fails to state a claim of intentional infliction of emotional distress against the Wildcat Defendants.

### 5. Violation of Rights Otherwise Guaranteed under the Laws and Constitution of the State of New York

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This standard is "extremely permissive." *Wynder v. McMahon,* 360 F.3d 73, 77 (2d Cir.2004). A

plaintiff need only disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000). Dismissal under Rule 8 is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised. *Id.* Here, plaintiff's final claim alleging "violation of rights otherwise guaranteed to the plaintiff under the laws and constitution of the State of New York" is too vague to provide the Wildcat Defendants with a fair understanding of what plaintiff is complaining about. Accordingly, it fails to satisfy the extremely permissive pleading standard of Rule 8 and must be dismissed. Although the court normally would grant a plaintiff leave to replead before dismissing an *entire complaint* pursuant to Rule 8, given the history of these proceedings and the exhaustive array of other claims set forth in the First Amended Complaint, leave to amend this "catchall" claim is not appropriate.

### 6. Civil Conspiracy

New York recognizes a claim for civil conspiracy only where a plaintiff has demonstrated that an actionable underlying tort was committed. *Alexander & Alexander of New York,* 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986) ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort ."); *see Gmurzynska v. Hutton,* 355 F.3d 206, 211 (2d Cir.2004). Here, since all of plaintiff's underlying tort claims have been dismissed, the civil conspiracy claim must be dismissed as well.

### *IV. Motion for Leave to a File Supplemental Pleading*

**\*15** "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 13

Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense." Fed.R.Civ.P. 15(d). Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 66 (2d Cir.1995).

Plaintiff's request to add an additional Title VII claim against individual defendants is denied on the ground of futility because, as discussed above, individuals are not subject to liability under Title VII. *See Tomka,* 66 F.3d at 1313.

Plaintiff's request to add an additional Title VII claim against the Dept. of Education is denied on the grounds of undue delay, bad faith, and prejudice to the defendant. The factual allegations with which plaintiff seeks to supplement the First Amended Complaint concern events that occurred on and before August 5, 2003. But the First Amended Complaint was not filed until December 8, 2003. Thus, plaintiff's proposed new claim is based on facts that were known to him at the time that he filed the First Amended Complaint. It appears to the court that plaintiff's motion is an attempt to prolong the proceedings and to burden defendants with further costs and delays. Given that plaintiff failed to raise the proposed new claim in the First Amended Complaint despite being aware of the relevant facts at the time that he filed the First Amended Complaint; that all of the other Title VII claims asserted by plaintiff in this action against the Dept. of Education are duplicative of claims asserted by plaintiff in Oparaji I and II; that plaintiff was prohibited from adding additional claims to those lawsuits as a sanction for attempting to commit a fraud upon the court; that the instant motion constitutes plaintiff's sixth motion to amend or supplement pleadings in the three different actions for employment discrimination that he has pending against the Dept. of Education; that plaintiff's motion was made during the pendency of a motion to dismiss; and that plaintiff previously moved to amend his complaint in this action while a motion to dismiss was pending (which motion to amend was granted, rendering the prior motion to

dismiss moot), the court exercises its discretion to deny plaintiff's motion to file a supplemental pleading. To allow plaintiff to add an additional claim at this late date, given the history of these proceedings, would unduly prejudice the Dept. of Education and cause an unjustifiable delay in the resolution of this matter.

CONCLUSION

For the reasons set forth above, the Wildcat Defendants' motion to dismiss the original complaint is dismissed as moot. The Wildcat Defendants' motion to dismiss the First Amended Complaint is granted in its entirety; the NYC Defendants' motion to dismiss the First Amended Complaint is granted in its entirety; and plaintiff's motion for leave to file a supplemental pleading is denied. The Clerk of Court is directed to close this case.

**\*16** SO ORDERED.

E.D.N.Y.,2005.
Oparaji v. New York City Dept. of Educ.
Not Reported in F.Supp.2d, 2005 WL 1398072 (E.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2002 WL 31060368 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Salib v. I.C. System, Inc.
D.Conn.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.
Nader SALIB, Plaintiff,
v.
I.C. SYSTEM, INC., Defendant.
**No. Civ.A.3:01-CV1083JCH.**

July 24, 2002.

RULING ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DKT. NO. 10)
HALL, J.

*1 The plaintiff, Nader Salib, brings this case
pursuant to the Fair Credit Reporting Act ("FCRA"
), 15 U.S.C. § 1681 et seq, the Connecticut Unfair
Trade Practices Act ("CUTPA"), Conn.Gen.Stat. §
42-110a et seq, the Consumer Credit Reports Act ("
CCRA"), Conn.Gen .Stat. § 36a-695 and the
common law. The plaintiff alleges that the
defendant, I.C. System, failed to properly
investigate a debt allegedly owed by the plaintiff
and, as a result, continued to misreport the status of
the debt to consumer reporting agencies.

The plaintiff moved for the transfer and
consolidation of this action with the pending case of
*Salib v. I.C. System, Inc.,* Case No. 3:99-cv-2311
(TPS) ( "previously filed action"), currently before
Magistrate Judge Smith on consent for all purposes,
because the two cases are based on a common
nucleus of operative facts. The defendant opposed
the transfer and sought summary judgment on the
grounds that the plaintiff's case unlawfully splits a
cause of action and that the claims brought in this
case should have been brought in the previously
filed action. Unable to transfer a case to a
magistrate judge for all purposes without the
consent of both parties, which consent was not
obtained, the court denied plaintiff's motion on May
20, 2002. For the reasons stated below, defendant's

motion for summary judgment is also DENIED.

I. BACKGROUND

The plaintiff, Nader Salib ("Salib"), received
chiropractic treatment from a Dr. O'Connell and
was charged $220 for the services. After an
unsuccessful attempt to process the charges through
Salib's insurance, Dr. O'Connell placed the debt for
collection with the defendant, I.C. System, Inc.
According to the defendant, the doctor represented
that the debt was valid and owed and did not
indicate to the defendant that Medicaid/Title XIX
was involved.

I.C. System notified Salib of the debt. Salib
responded by sending a letter to I.C. System,
claiming that the debt was disputed. Salib informed
I.C. System thereafter via telephone that the debt
was covered by Medicaid and therefore could not
be collected. Both before and after this
communication with Salib, I.C. System reported to
credit agencies that the debt was unpaid and
disputed.

In this action, Salib claims that, because the debt
was covered by Title XIX, I.C. System could not
collect it and therefore should not have reported it
at all. Salib claims that I.C. System's failure to
investigate whether or not the debt was covered by
Title XIX violated its obligations under the Fair
Credit Reporting Act.

In the previously filed action, Salib brought claims
arising out of the same disputed debt under the Fair
Debt Collection Practices Act. Ruling on plaintiff
and defendant's cross motions for summary
judgment, Magistrate Judge Smith held that liability
under those claims hinged "upon whether the
defendant knew or should have known that the
information it was conveying to the credit reporting
services was false." Ruling on Cross Motions, *Salib
v. I.C. System, Inc.,* Case No. 3:99 CV 2311.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2002 WL 31060368 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

## II. DISCUSSION

### A. The Rule Against Claim-Splitting

*2  The rule against claim splitting is well-established. The rule "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Myers v. Colgate-Palmolive Company,* 102 F.Supp.2d 1208, 1224 (D.Kan.2000) (citations omitted). A district court has the authority, "as part of its general power to administer its docket, [to] stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N .A.,* 226 F.3d 133, 138 (2d Cir.2000).

The rule against claim-splitting requires that two causes of action must be joined in one suit if "the evidence necessary to prove one cause of action would establish the other." *United States v. The Haytian Republic,* 154 U.S. 118, 124 (1894). The Second Circuit has held that claim splitting will lead to preclusion where "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits, or, in other words, whether the facts essential to the second suit were present in the first suit." *Curtis,* 226 F.3d at 139. A dispositive motion based on improper claim-splitting "need not-indeed, often cannot-wait until the first suit reaches final judgment." *Hartsel Springs Ranch v. Bluegreen Corp.,* No. 00-B-1653, 2002 WL 1554456 at *3, n. 1 (10th Cir. July 16, 2002). As a result, "in the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion." *Id.*

"Because of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending," a district court has a number of options when faced with duplicative litigation, including to "stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Citibank,* 226 F.3d at 138. If claim-splitting is involved, simple dismissal is also appropriate because "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 138-39.

### B. Salib's claims under the FCRA and the FDCPA

In the two lawsuits pending before this district court, Salib has made substantially similar, though not identical, allegations against I.C. System. The material facts forming the basis for liability in both actions are intertwined. In this action, brought under the Fair Credit Reporting Act (FCRA), liability hinges on whether or not I.C. System failed to conduct an investigation with respect to Salib's claim that the debt was not owing. I.C. System's obligation to investigate under the FCRA is not triggered unless a credit reporting agency, not the plaintiff, notified it of the dispute. *Young v. Equifax Credit Information Services, Inc.,* No. 00-31254, 2002 WL 1277584 at *7 (5th Cir. June 11, 2002).

*3  In the previously filed action, liability under the Fair Debt Collection Practices Act (FDCPA) depends on whether the defendant knew or should have known that the information it was conveying to the credit reporting services was false. A number of factors, including whether or not a credit reporting agency notified I.C. System of the dispute, could potentially affect the determination of liability under the FDCPA.

As a result, it is not possible for the court to anticipate whether the facts necessary to prove plaintiff's cause of action under the FCRA will be established in the context of his FDCPA claim. Therefore, the court cannot determine whether "the facts essential to the second suit [are] present in the first." *Curtis,* 226 F.3d at 139. Because the court cannot predict the preclusive effect of the previously filed action involving plaintiff and defendant, defendant's motion for summary judgment (Dkt. No. 10) is DENIED.

### III. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (Dkt. No. 10) is DENIED.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2002 WL 31060368 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Because the previously filed action may have a
preclusive effect on this case, however, the court
hereby orders this case, pending the outcome of the
previously filed action, dismissed without prejudice
to the plaintiff moving to reopen within 30 days
following judgment in the previously filed action.

SO ORDERED

D.Conn.,2002.
Salib v. I.C. System, Inc.
Not Reported in F.Supp.2d, 2002 WL 31060368
(D.Conn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.